**No. 16-1410**

# United States Court of Appeals
# for the Federal Circuit

TINNUS ENTERPRISES, LLC and ZURU LTD.,

Plaintiffs-Appellees,

v.

TELEBRANDS CORP. and BED BATH & BEYOND INC.,

Defendants-Appellants.

---

*On Appeal from the United States District Court for the*
*Eastern District of Texas, 6:15-cv-00551-RWS-JDL (Judge Schroeder)*

---

## CORRECTED BRIEF FOR APPELLANTS TELEBRANDS CORP. AND BED BATH & BEYOND, INC.

---

David Boies
**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

D. Michael Underhill
Amy L. Neuhardt
Stacey K. Grigsby
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
munderhill@bsfllp.com
aneuhardt@bsfllp.com
sgrigsby@bsfllp.com
*Attorneys for Appellant Telebrands Corp.*

Robert T. Maldonado
Elana B. Araj
**COOPER & DUNHAM LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 278-0506
Facsimile: (212) 391-0525
rmaldonado@cooperdunham.com
earaj@copperdunham.com
*Attorneys for Appellants Telebrands Corp. and*
*Bed Bath & Beyond Inc.*

## <u>CERTIFICATE OF INTEREST FOR TELEBRANDS CORP.</u>

Counsel for Appellant Telebrands, Corp. certifies the following:

1. The full name of every party represented by me is: TELEBRANDS CORP.

2. The name of the real party in interest represented by me is: TELEBRANDS CORP.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock in the party represented by me are: NONE.

4. The names of all law firms and partners or associates that appeared for the party represented in the trial court or agency or are expected to appear in this court are:

**<u>COOPER & DUNHAM</u>**
Robert T. Maldonado
Elana Araj

**<u>LANCE LEE ATTORNEY AT LAW</u>**
Lance Lee

**<u>LOVE LAW FIRM PC</u>**
Gregory Love

**<u>BOIES SCHILLER & FLEXNER LLP</u>**
D. Michael Underhill
Stacey K. Grigsby
Richard Meyer
Amy L. Neuhardt


Dated:  March 4, 2016              */s/ D. Michael Underhill*
                                   D. Michael Underhill
                                   **BOIES, SCHILLER & FLEXNER LLP**
                                   5301 Wisconsin Avenue, NW
                                   Washington, DC 20015
                                   Telephone: (202) 274-1120
                                   Facsimile: (202) 237-6131

## <u>CERTIFICATE OF INTEREST FOR BED BATH & BEYOND, INC.</u>

Counsel for Appellant Bed, Bath & Beyond, Inc. certifies the following:

1. The full name of every party represented by me is: BED BATH AND BEYOND INC.

2. The name of the real party in interest represented by me is: BED BATH AND BEYOND INC.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock in the party represented by me are: NONE.

4. The names of all law firms and partners or associates that appeared for the party represented in the trial court or agency or are expected to appear in this court are:

**<u>COOPER & DUNHAM</u>**
Robert T. Maldonado
Elana Araj

**<u>LANCE LEE ATTORNEY AT LAW</u>**
Lance Lee

**<u>LOVE LAW FIRM PC</u>**
Gregory Love

Dated: March 4, 2016                    */s/ Robert T. Maldonado*
                                        Robert T. Maldonado
                                        **COOPER & DUNHAM LLP**
                                        30 Rockefeller Plaza
                                        New York, New York 10112

ii

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE..............................................................1

I.    NATURE OF THE CASE ............................................................1

II.   STATEMENT OF FACTS AND COURSE OF PROCEEDINGS BELOW .2

    A.    The Parties Develop Competing Products. ...........................2

    B.    Appellees Obtain A Preliminary Injunction, Relying On
        A Claim Chart As Their Primary Evidence. ...........................4

    C.    The USPTO Finds That The '066 Patent is More Likely Than Not
        Invalid, and Appellants Seek an Emergency Stay of the Preliminary
        Injunction.................................................................6

SUMMARY OF THE ARGUMENT ......................................................8

ARGUMENT ...............................................................................10

I.    STANDARD OF REVIEW ........................................................10

II.   THE '066 PATENT IS MORE LIKELY THAN NOT INVALID. .............11

    A.    The Terms "Substantially Filled" and "Connecting Force"
        are Indefinite..........................................................13

    B.    The Claims of The '066 Patent are Obvious In Light of Prior Art. ....16

III.  THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES
     WOULD LIKELY SUCCEED IN PROVING THAT THE BALLOON
     BONANZA PRODUCT INFRINGES THE '066 PATENT. .......................21

    A.    Appellees Did Not Carry Their Burden of Showing Likely
        Infringement. ..........................................................21

    B.    The District Court Failed to Construe Disputed Terms. ...................22

    C.    The District Court Misapplied The Claim To Read On The Balloon
        Bonanza Product.......................................................24

IV.   THE DISTRICT COURT'S FINDING THAT APPELLEES
     DEMONSTRATED IRREPARABLE HARM WAS CLEARLY
     ERRONEOUS. .........................................................27

CONCLUSION .............................................................................29

# TABLE OF AUTHORITIES

## Cases

*Aevoe Corp. v. AE Tech Co., Ltd.,*
    727 F.3d 1375 (Fed. Cir. 2013) .......................................................................10

*Altana Pharma AG v. Teva Pharm. USA, Inc.,*
    566 F.3d 999 (Fed. Cir. 2009) ..........................................................................12

*Alza Corp. v. Mylan Labs., Inc.,*
    464 F.3d 1286 (Fed. Cir. 2006) .......................................................................16

*Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
    678 F.3d 1314 (Fed. Cir. 2012) .......................................................................18

*Bell & Howell Document Mgmt. Products Co. v. Altek Sys.,*
    132 F.3d 701 (Fed. Cir. 1997) .........................................................................23

*Celsis in Vitro, Inc. v. CellzDirect, Inc.,*
    664 F.3d 922 (Fed. Cir. 2012) .........................................................................27

*Chamberlain Group, Inc. v. Lear Corp.,*
    516 F.3d 1331 (Fed. Cir. 2008) ........................................................... 22, 23, 24

*E.I. du Pont de Nemours & Co v. MacDermid Printing Solutions LLC,*
    525 F.3d 1353 (Fed. Cir. 2008) .......................................................................21

*Entegris, Inc. v. Pall Corp.,*
    490 F.3d 1340 (Fed. Cir. 2007) .......................................................................12

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,*
    90 F.3d 479 (Fed. Cir. 1996) ...........................................................................27

*Graco, Inc. v. Binks Mfg. Co.,*
    60 F.3d 785 (Fed. Cir. 1995) ..................................................................... 23, 26

*Harris Corp. v. Ericsson Inc.,*
    417 F.3d 1241 (Fed. Cir. 2008) .......................................................................22

*In re Clay,*
    966 F.2d 656 (Fed. Cir. 1992) .........................................................................18

*In re Schreiber*,
  128 F.3d 1473 (Fed. Cir. 1997) ..........................................................17

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products*, LLC,
  431 F. App'x 884 (Fed. Cir. 2011) ......................................................20

*Lakedreams v. Taylor*,
  932 F.2d 1103 (5th Cir. 1991) ............................................................10

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ..............................................................21

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
  429 F.3d 1344 (Fed. Cir. 2005) ..........................................................25

*Nautilus, Inc. v. Biosig Ins., Inc.*,
  134 S. Ct. 2120 (2014)........................................................................13

*Nutrition 21 v. United States*,
  930 F.2d 867 (Fed. Cir. 1991) ............................................................22

*Oakley, Inc. v. Sunglass Hut Int'l*,
  316 F.3d 1331(Fed. Cir. 2003) ...........................................................11

*PHG Techs., LLC v. St. John Companies, Inc.*,
  469 F.3d 1361 (Fed. Cir. 2006) ..........................................................11

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
  549 F.3d 842 ......................................................................................20

*Qingdao Taifa Grp. Co. v. United States*,
  581 F.3d 1375 (Fed. Cir. 2009...........................................................11

*Scientific Plastic Prods. Inc., v. Biotage AB*,
  766 F.3d 1355 (Fed. Cir. 2014) ..........................................................18

*Sepulvado v. Jindal,*
  729 F.3d 413 (5th Cir. 2013) ..............................................................11

*Shuffle Master, Inc. v. Vending Data Corp.*,
  163 Fed. Appx. 864 (Fed. Cir. 2005)..................................................23

*Titan Tire Corp. v. Case New Holland, Inc.,*
    566 F.3d 1372 (Fed. Cir. 2009) ................................................................ 12, 20

*Vita-Mix Corp. v. Basic Holding, Inc.,*
    581 F.3d 1317 (Fed. Cir. 2009) ............................................................25

*Wind Tower Trade Coal. v. United States,*
    741 F.3d 89 (Fed. Cir. 2014) ............................................................11

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008).............................................................10

**Statutes**

35 U.S.C. § 103 ................................................................ 4, 8, 13

35 U.S.C. § 112 ................................................................ 4, 8, 13

35 U.S.C. § 324 ............................................................20

35 U.S.C. §§ 311-318............................................................20

**Rules**

Federal Rule of Appellate Procedure 8 ...............................................8

## **STATEMENT OF RELATED CASES**

Pursuant to Rule 47.5, Appellants' counsel states that they are aware of the following appeal in or from this action that was previously before this Court and is unaware of any other appellate cases pending before this Court or any other courts of appeals:

*In re Telebrands Corps. and Bed Bath & Beyond Inc.*, Misc. No. 2016-106 (Fed. Cir.); Order dated February 24, 2016; Panel: Moore, Linn and Wallach.

*In re Telebrands Corps. and Bed Bath & Beyond Inc.,* No. 2016-1410 (Fed. Cir.); Order dated March 3, 2016; Panel: Moore, Linn and Wallach.

Counsel also states that they are aware of the following related cases, which may directly affect or be directly affected by this Court's decision in this appeal:

*Tinnus Enterprises, et al. v. Telebrands Corp.*, Civ. No. 6:16-cv-33 (E.D. Tex.)

*Tinnus Enterprises v. Wal-Mart Stores*, *Inc.*, Civ. No. 6:16-cv-34 (E.D. Tex.)

*Zuru Ltd. v. Telebrands Corp.*, Civ. No. 2:15-cv-548 (D.N.J.)

*Telebrands Corp. v. Zuru Ltd.*, Civ. No. 2:15-cv-8675 (D.N.J.)

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the District Court's preliminary injunction order pursuant to 28 U.S.C. § 1292(c).

## STATEMENT OF THE ISSUES

1.     Whether the District Court abused its discretion in holding that the Appellants failed to raise a substantial question as to validity of U.S. Patent No. 9,051,066, where the U.S. Patent and Trademark Office ("USPTO") has found that the patent is more likely than not invalid.

2.     Whether the District Court abused its discretion in finding that the Appellees would likely succeed in proving that Balloon Bonanza infringes the '066 Patent, where the court failed to construe all disputed claim terms, improperly shifted the burden of proof, and erroneously concluded that claim 1 reads on the Balloon Bonanza product.

3.     Whether the District Court erred in finding irreparable harm to Appellees based on evidence that predated the issuance of the '066 Patent.

## STATEMENT OF THE CASE

### I.     NATURE OF THE CASE

Telebrands Corp., a leading developer and marketer of consumer products, and Bed Bath & Beyond ("Bed Bath"), a retailer, appeal the United States District Court for the Eastern District of Texas's grant of a preliminary injunction prohibiting them from "making, using, importing, marketing, advertising, offering

1

to sell, or selling" Balloon Bonanza or any colorable imitation thereof that infringes the '066 Patent in the United States. A46-47. In June 2015, Appellees Tinnus Enterprises, LLC and Zuru Ltd. sued Telebrands and Bed Bath for alleged infringement of the '066 Patent. Days later, Appellees sought a preliminary injunction against the Balloon Bonanza product, which is used to fill multiple water balloons at the same time. After a hearing, the magistrate judge recommended granting the injunction, and the District Court adopted the recommendation over Appellants' objections. The court entered the preliminary injunction order on December 22, 2015.

## II.    STATEMENT OF FACTS AND COURSE OF PROCEEDINGS BELOW

### A.    The Parties Develop Competing Products.

This appeal concerns products for filling multiple water balloons. During the summer of 2014, Telebrands undertook steps to begin manufacturing, marketing and selling its Balloon Bonanza product, which allows many water balloons to be filled simultaneously. A458. Bed Bath & Beyond is a customer of Telebrands that sold the Balloon Bonanza product in its stores. A458.

Appellee Zuru, a large Chinese toy company, sells a competing product, "Bunch O Balloons." A458. Josh Malone, the named inventor on the '066 Patent, asserts that he developed the concept for Bunch O Balloons in early 2014. In

2

August 19, 2014, Zuru entered into an exclusive licensing deal with Mr. Malone's small limited liability company, Appellee Tinnus. A268 ¶ 15.

Subsequently, on June 9, 2015, the USPTO issued the '066 Patent to Tinnus. Claim 1 is the only independent claim and provides in its entirety:

> An apparatus comprising of:
>
>> a housing comprising an opening at a first end, and a plurality of holes extending through a common face of the housing at a second end;
>>
>> a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;
>>
>> a plurality of containers, each container removably attached to a respective one of the hollow tubes; and
>>
>> a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers, wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

On the day the patent issued, Zuru and Tinnus brought this suit in the Eastern District of Texas. A209-220.

3

On June 22, 2015, Appellant Telebrands filed a petition with the Patent Trial and Appeal Board ("Board") of the USPTO seeking post-grant review of the '066 Patent ("PGR Petition"). Among other things, the PGR Petition argued that: (1) the claims of the '066 Patent are indefinite under 35 U.S.C. § 112; and (2) the asserted claims of the '066 Patent are obvious under 35 U.S.C. § 103, based on the prior art references of Cooper, Saggio and Lee. A547-550; A556-923.

**B.    Appellees Obtain A Preliminary Injunction, Relying On A Claim Chart As Their Primary Evidence.**

On June 18, 2015, before the PGR Petition was filed, Appellees moved for a preliminary injunction against the Balloon Bonanza product, claiming that it literally infringed the '066 Patent. A243-264. In support of their request, Appellees did not submit any argument or evidence concerning the validity of the '066 Patent. On the issue of infringement, Appellees submitted a claim chart with one column that recited each element in claim 1, a second column that parroted the language of the '066 Patent, and a third column that included "illustrative" pictures of the Balloon Bonanza product, images from the instruction sheet for the product, and screen shots from the infomercial for the product. A441-452. Appellee's motion and claim chart did not propose any claim constructions or explain *how* those terms applied to the Balloon Bonanza product. Appellees waited until their reply brief to offer an expert declaration on validity and infringement. A243-264.

4

But that declaration also did not offer a construction of any terms. A243-264. Additionally, Appellees did not argue doctrine of equivalents.

In opposition, Telebrands offered evidence that there was a substantial question regarding the '066 Patent's validity, and incorporated all of the arguments and evidence that it submitted to the Board in its PGR Petition, which were extensive. It also argued that the Appellees failed to show entitlement to preliminary injunctive relief, including that the Balloon Bonanza product did not infringe the '066 Patent, and that Appellees had not demonstrated irreparable harm or that the balance of harms or public interest supported a preliminary injunction. A453-473.

In August 2015, the magistrate judge held an evidentiary hearing. A61-180; A9. Appellees did not present any evidence or argument at the hearing about the validity of the '066 Patent, and chose not to call their expert witness to testify. Appellees also did not call a single witness to testify concerning infringement. Instead, Appellees called the named inventor of the '066 Patent, Josh Malone, and Zuru's Chief Operating Officer, Anna Mowbray, who both testified regarding potential harm to Appellees allegedly caused by Appellants' sale of the Balloon Bonanza product. A76-87; A107-120. The magistrate judge subsequently issued his Report and Recommendation ("R&R"), which concluded that Appellees were likely to succeed on the merits, and recommended that the District Court grant the

preliminary injunction. Although the R&R observed that the parties disputed the construction of multiple claim terms, such as "connecting force" and "substantially filled," it declined to construe either term. A22-25. Rather, the R&R construed only the claim term "attached," to which it ascribed the plain and ordinary meaning. A23-24. Further, the R&R did not specify where each claim term is found in the accused Balloon Bonanza product. *Id.* Dismissing the invalidity arguments made in the preliminary injunction briefing and the PGR Petition, the R&R concluded that Appellees did not raise "a substantial question concerning the validity of the '066 Patent." A25; A27-31.

Over Appellees' objections, the District Court adopted the R&R in a four-page decision, on December 2, 2015. A39-42. This opinion did not analyze Appellees' validity arguments beyond observing that the magistrate judge went through the prior art references and approving the magistrate judge's findings of secondary considerations. A25-31. The District Court thus agreed that Appellees "were not likely to raise a substantial question as to the validity of the '066 Patent." A41.

### C. The USPTO Finds That The '066 Patent is More Likely Than Not Invalid, and Appellants Seek an Emergency Stay of the Preliminary Injunction.

Independent of the proceedings in the District Court, Telebrands challenged the validity of the '066 Patent before the Board by filing the PGR Petition. The

PGR Petition was supported by prior art references and declarations from three experts. A547-550; A556-923. The patent owner, Appellee Tinnus, responded to the PGR Petition and submitted all briefing on the preliminary injunction motion in the District Court, as well as the R&R recommending that the preliminary injunction be granted.

After considering the patent owner's arguments in favor of validity as well as the magistrate judge's R&R, the Board issued its decision on January 4, 2016, in which it instituted post-grant review of the '066 Patent and found all claims of the '066 Patent more likely than not invalid.[1] A181-208. The Board relied on the same evidence and arguments that the District Court had previously rejected. *Id.* Specifically, in its Opposition to Appellees' Motion for Preliminary Injunction in the District Court, Telebrands had included its filings with the Board. A547-550; A556-923.

Citing the January 4, 2016 PGR decision, Appellants promptly moved in the District Court for a stay of the preliminary injunction pending appeal. In addition to emphasizing that the District Court's grant of Appellees' motion for a preliminary injunction could not be reconciled with the subsequent PGR decision, the motion described how Appellees had used the preliminary injunction order to

---

[1] In response to Telebrands' indefiniteness arguments, the patent owner disclaimed claims 7 and 9 of the '066 patent.

threaten Telebrands' customers and to accuse Telebrands' new non-infringing water balloons products, which were not the subject of the motion, of infringement. The magistrate judge denied the motion to stay. A1659-1667. Following issuance of the R&R, Appellees moved in this Court for a stay pursuant to Federal Rule of Appellate Procedure 8. Fed Cir. Case No. 16-1410, Dkt. 18. That motion was denied. Fed. Cir. Case No. 16-1410, Dkt. 28.

## SUMMARY OF THE ARGUMENT

Because the evidence before the District Court demonstrated that the '066 Patent was likely invalid, the court abused its discretion when it issued a preliminary injunction. Appellants' evidence was sufficient to show that the '066 Patent is invalid because all claims are indefinite under 35 U.S.C. § 112 and obvious under 35 U.S.C. § 103. A453-473. Despite this evidence, the District Court incorrectly found that Appellants had not "raised a substantial question concerning the validity of the '066 Patent." A27-31. This conclusion is irreconcilable with the record before the District Court, and the Board's decision, based on a virtually identical record, that all claims of the '066 Patent are more likely than not invalid.

The District Court's finding that Appellants' product more likely than not infringed the '066 Patent is likewise flawed. As a threshold matter, the court's infringement finding is based on an inadequate evidentiary record. Appellees' sole

8

"evidence" of infringement was: (1) a claim chart that alleged in a conclusory fashion that the Balloon Bonanza product met the limitations of claim 1 of the '066 Patent; (2) a sample of the accused product; and (3) screenshots, images, and instruction sheets for the accused product. Appellees never attempted to explain *how or why* the accused product met *every* limitation of claim 1. Yet, without performing even a preliminary claim construction of the disputed terms, the District Court shifted the burden of proof, and found that Appellants had not shown that Appellees were not likely to succeed on the merits. A22-25.

Even assuming that no claim construction was necessary for the disputed claim terms, the District Court improperly concluded that the claim terms read on the Balloon Bonanza product. As Appellees demonstrated below, the Balloon Bonanza product does not meet the limitation in every claim that each hollow tube be "attached" to the housing at the second end. Nor does the product require a user to shake the product to detach the containers from the end of each tube when each is substantially filled.

Furthermore, Appellees offered insufficient evidence of irreparable harm. The majority of Appellees' evidence involved pre-issuance activities. For example, the District Court based its finding of irreparable harm, in large part, on the Appellees' claim of price erosion. But the evidence establishes that Appellees set the price of their now-patented product Bunch O Balloons *before* the '066 Patent

9

issued. The District Court's reliance on price erosion is therefore improper, and Appellees did not meet their burden of showing irreparable harm.

In light of the strong evidence of invalidity, the paucity of evidence offered on infringement and irreparable harm, and the court's refusal to construe, even tentatively, disputed claim terms, this Court should reverse the District Court's preliminary injunction order.

## ARGUMENT

### I.   STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because the "grant, denial or modification of a preliminary injunction … is not unique to patent law," the Federal Circuit "applies the law of the regional circuit when reviewing and interpreting" a grant of a preliminary injunction. *Aevoe Corp. v. AE Tech Co., Ltd.,* 727 F.3d 1375, 1381 (Fed. Cir. 2013) (citations omitted).

Both the Fifth Circuit and the Federal Circuit agree that, in deciding whether to grant a preliminary injunction, a District Court must consider: "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (citations omitted); *PHG Techs., LLC v. St. John Companies, Inc.,* 469 F.3d 1361,

1365 (Fed. Cir. 2006) (citing *Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331, 1338–39 (Fed. Cir. 2003)). Review of a preliminary injunction is for abuse of discretion. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013). A court abuses its discretion if it commits "a clear error of judgment in weighing the relevant factors or exercise[s] its discretion based on an error of law or clearly erroneous fact finding." *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014) (citing *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009)); *see also Sepulvado,* 729 F.3d at 417.

## II.    THE '066 PATENT IS MORE LIKELY THAN NOT INVALID.

The District Court clearly erred in concluding that Telebrands did not raise a substantial question regarding the validity of the '066 Patent. A26-27. The R&R incorrectly asserted that Telebrands did not "substantively brief their invalidity arguments." A00025. In actuality, Appellants' briefs below demonstrated exactly why the '066 Patent was invalid. A464-467. Moreover, in their opposition to the Appellees' preliminary injunction motion, Appellants incorporated in its entirety the PGR Petition, which detailed Appellants' invalidity arguments even further. The lower court's failure to credit Appellants' invalidity arguments – particularly in light of the PGR decision finding that the '066 Patent is more likely than not invalid – is clear error.

This Court's precedent makes clear that "a patent holder seeking a preliminary injunction bears the ultimate burden of establishing a likelihood of success on the merits with respect to the patent's validity." *Altana Pharma AG v. Teva Pharm. USA, Inc*., 566 F.3d 999, 1005-06 (Fed. Cir. 2009) (citing *Entegris, Inc. v. Pall Corp.,* 490 F.3d 1340, 1351 (Fed. Cir. 2007)). But here, the District Court improperly shifted this burden to Appellants, stating that Appellants purportedly had not "raised a substantial question as to obviousness of claim 1 of the '066 Patent." A31. The District Court did not consider the evidence of invalidity offered by the alleged infringer, as it was required to do. The burden was not on Appellants to show invalidity, but on *Appellees* to show that they are likely to be successful in proving the patent's validity.

The record below establishes that Appellees did not make such a showing. At the evidentiary hearing, Appellees presented no arguments or evidence on invalidity. Tellingly, neither the R&R nor the District Court's order adopting the R&R cite *any* affirmative evidence presented by the Plaintiffs-Appellees on validity. *Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1378-79 (Fed. Cir. 2009) ("[O]ur precedents establish that the phrase, ["raises a substantial question"], refers to a conclusion reached by the trial court *after* considering the evidence on *both sides* of the validity issue. Thus the trial court *first must weigh the evidence both for and against validity* that is available at this preliminary stage

12

in the proceedings."). In concluding that the patent is likely valid, the District Court improperly shifted the burden of proof to Appellants.

Appellants advanced a number of separate invalidity arguments, including: (1) that the claims of the '066 Patent are indefinite under 35 U.S.C. § 112; and (2) that the claims of the '066 Patent are invalid under 35 U.S.C. § 103, as obvious in light of Cooper, Saggio, and Lee. A464-467. The District Court failed to adequately consider these either of these arguments.

### A. The Terms "Substantially Filled" and "Connecting Force" are Indefinite.

A patent is "invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Ins., Inc.,* 134 S. Ct. 2120, 2124 (2014). Independent claim 1 of the '066 Patent recites that "each elastic fastener [is] configured to provide a *connecting force* that is not less than a weight of one of the containers when *substantially filled* with water." A48-59 (emphasis added).

As Telebrands demonstrated below and as confirmed by the Board in the PGR decision, the phrase "substantially filled," when read in light of the specification and prosecution history, does not allow one skilled in the art to determine when an expandable container has met this limitation. Instead, the patent establishes a subjective standard whereby each individual determines for himself

13

when the "desired size" of the container has been reached. A57, Col. 4, lines 6-9, 60-62 ("After containers have reached a *desired size or volume* they may be detached from tubes"; "When containers have reached a *desired size* and/or they are filled with the *desired volume* of fluid, they may be removed from tubes"; "In some embodiments, containers 18 may be marked with volumetric measurements, and fluid flow may be turned off when the fluid has filled containers 18 to a *desired volume*.") (emphasis added). The scope of the term "substantially filled" as set forth in independent claim 1, when read in light of the specification and prosecution history of the '066 Patent, is subjective and, therefore, indefinite.

The term "connecting force" is also indefinite. The only definition provided for connecting force is that it is not less than the weight of one of the containers that has achieved the "desired size." Without knowing what volume of water constitutes "substantially filled," one skilled in the art cannot know its weight, thus rendering the "connecting force" indefinite.

The lower court misread the patent when it concluded that the '066 Patent provides "specific parameters regarding when the containers are 'substantially filled.'" A26. When attempting to explain these alleged "specific parameters," the R&R states that the "'066 Patent provides that the containers are substantially filled with water when the 'water overcomes the connecting force and causes the containers to detach from the hollow tubes.'" A26. This statement, however, is

14

incorrect and improperly truncates the claim limitation, which reads as follows: "such that *shaking* the hollow tubes in a state in which the containers are substantially filled with water *overcomes the connecting force* and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers." A58, Col. 6, lines 46-49 (emphasis added) (hereafter "shake-to-detach feature"). Thus, it is the *shaking* – not water – which overcomes the connecting force. The shaking occurs *after* the containers are substantially filled with water, so this clause does not provide any parameters as to when the containers are "substantially filled." The R&R's conclusion that the '066 Patent defines "substantially filled" is based on a clearly erroneous reading of the claim.

The PGR decision confirms that both terms are indeed indefinite. The Board found that "substantially filled" was indefinite because the patent provided no "objective standard for measuring the scope of 'filled' or 'substantially filled.'" A192. The Board also expressly rejected the argument that the lower court found persuasive: that "the containers are substantially filled with water when the 'water overcomes the connecting force and causes the containers to detach from the hollow tubes.'" Rather, the Board correctly concluded that claim 1 of the '066 Patent "plainly requires 'shaking' to detach the containers." A194.

15

**B.      The Claims of The '066 Patent are Obvious In Light of Prior Art.**

A patent is obvious "if the differences between it and the prior art are 'such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1289 (Fed. Cir. 2006) (citation omitted). As Telebrands argued below, many prior art references, including Cooper, Saggio, and Lee, disclose hose attachment devices with multiple tubes, self-sealing water balloons, and systems for filling multiple self-sealing water balloons at one time. A464-467. At the hearing, Telebrands presented a demonstrative of the commercial embodiment of the Cooper sprinkler with balloons attached to each tube to demonstrate that claim 1 was an obvious combination of the prior art. A1961-1966; A149-150.

The District Court wrongly dismissed this showing, incorrectly finding that the prior art references did not disclose an elastic fastener having the properties recited in claim 1 of the '066 Patent. A29-30. Appellees did not raise this argument in their brief or at the hearing, and the magistrate judge raised this issue for the first time in the R&R. The R&R and District Court's conclusion is wrong for at least three reasons. *First*, the district court misread the claim when it concluded that the elastic fastener enables the shaking to overcome the connecting force that holds the containers onto the tubes. A30. The elastic fasteners do not enable shaking, and the

16

magistrate judge does not explain how this could be possible. *Second*, the magistrate judge ignored that the *functional* limitations of the elastic fastener do not affect the patentability of the *apparatus* claimed in the '066 Patent. A205-206. The District Court should have – but did not – assess whether the prior art combination disclosed the claimed *structure,* not whether the prior art necessarily performed the same *function.* Specifically, it is "well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable." *In re Schreiber*, 128 F.3d 1473, 1477-78 (Fed. Cir. 1997). The District Court's focus on the *function* of the elastic fasteners was clear error.

*Third*, the District Court also wrongly found that because the Lee reference related to obesity, it was unclear "how a person of ordinary skill in the art would have been motivated to combine Lee with Cooper, which relates to lawn and garden sprinklers, or Saggio, which relates to a water balloon system." A30. The District Court is simply wrong in concluding that because the prior art derives from a different field, that is the end of the obviousness inquiry. When evaluating prior art in the context of determining obviousness, a court must consider "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Scientific Plastic Prods. Inc., v. Biotage AB*, 766 F.3d 1355,

1359 (Fed. Cir. 2014) (quoting *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992)). Here, the District Court never addressed whether the references are reasonably pertinent to the problem here. If the court had undertaken the proper inquiry, it would have recognized that all the prior art related to the same problem addressed by the '066 Patent – automatically sealing a balloon or multiple balloons at one time.

Finally, the District Court stated that secondary considerations "will be relevant" in this case to rebut any "prima facie showing of obviousness," but made no findings as to any secondary considerations. A31. Indeed, although the District Court concluded that Appellees "ha[d] set forth evidence of commercial success and copying," the court failed to identify any such evidence, from either Appellees' papers or the testimony presented at the hearing. In actuality, Appellees presented no evidence of sales. To the extent that the District Court may have relied on Mr. Malone's testimony or other statements concerning the popularity of his product when he first introduced it, Appellees never attempted to demonstrate a nexus between their products' alleged commercial success and any of its patented features. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1322 (Fed. Cir. 2012) (declining to consider commercial success in obviousness analysis where Plaintiff failed to show "the requisite nexus between the patented design and the success of [the product]."). Further, despite the fact that Appellants had not yet

answered the complaint, the District Court improperly shifted the burden by observing that Appellants had not yet denied copying, rather than pointing to any affirmative evidence of copying. The overwhelming evidence of obviousness in light of the prior art outweighs any of these secondary considerations. The lower court clearly erred in its obviousness analysis.

The lower court's error is underscored by the Board's conclusion, based on the same evidence, that all claims of the '066 Patent asserted by Appellees in this action are indeed obvious. Among other things, the Board determined that there was sufficient evidence to "support a legal conclusion of obviousness as to claims 1-4, 8, and 14 based on the combined teachings of Cooper, Saggio, and Lee." A204. Specifically, the Board found that Lee was "reasonably pertinent to a particular problem the inventor of the '066 Patent was trying to solve." A204. The Board also properly rejected the functional arguments that the lower court had accepted regarding the elastic fastener and shake-to-detach language in the claim. Rather, the Board correctly reasoned that "the challenged claims are apparatus claims, which must be distinguished from the prior art in terms of structure rather than function." A205.

Although the Board's decision post-dates the issuance of the preliminary injunction, the PGR Decision is nevertheless highly relevant "when evaluating… the likelihood of success on the merits." *See Procter & Gamble Co. v. Kraft Foods*

19

*Global, Inc.,* 549 F.3d 842, 847; *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products*, LLC, 431 F. App'x 884, 889 n.3 (Fed. Cir. 2011) ("Although the rejection issued after the District Court's preliminary injunction ruling, we note that the rejection provides further support for First Quality' position that the '187 patent claims are 'vulnerable.'").[2]

Here, the Board applied the same "more likely than not" standard that the District Court is supposed to apply in determining likelihood of success on the merits. *See* 35 U.S.C. § 324(a); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009) (The trial court "must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid."). Furthermore, the Board considered virtually the same record that was before the lower court. A547-549 ¶¶ 4-22.

At a minimum, the conflict between the Board's and the District Court's findings on the validity of the '066 Patent establishes a substantial question concerning the validity of the patent. *See, e.g.*, *E.I. du Pont de Nemours & Co v.*

---

[2] Although *Kimberly-Clark* and *Procter & Gamble* involve *inter partes* reexamination ("IPR") proceedings rather than post-grant review proceedings, the Board uses the same standard in both proceedings. *Compare* 35 U.S.C. §§ 311-318 (standard for review is "reasonable likelihood that the petition would prevail with respect to at least one of the claims challenged") *with* 35 U.S.C. § 324 (standard for a post-grant review is whether "more likely than not that at least 1 of the claims challenged in the petition is unpatentable").

*MacDermid Printing Solutions LLC*, 525 F.3d 1353, 1358 (Fed. Cir. 2008) (granting a stay pending an appeal of the injunction and holding USPTO examiner's rejection of patent claims in a reissue proceeding as invalid demonstrated that substantial legal questions existed concerning the validity of the patent).

In summarily dispensing with Appellants' invalidity arguments, the lower court clearly erred.

## III. THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES WOULD LIKELY SUCCEED IN PROVING THAT THE BALLOON BONANZA PRODUCT INFRINGES THE '066 PATENT.

The District Court did not construe the scope and meaning of disputed terms or analyze how, using proper claim constructions, Balloon Bonanza met every limitation of claim 1. Even assuming that the District Court applied the proper constructions, Appellees offered insufficient evidence of infringement.

### A. Appellees Did Not Carry Their Burden of Showing Likely Infringement.

Infringement requires a two-step analysis. First, a court determines the proper scope and meaning of the asserted claim and, second, decides whether the properly construed claim reads on the accused product. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). As with a showing of likelihood of success as to the patent's validity, at the preliminary injunction stage, the *patentee* bears the burden of showing the accused product more likely

than not infringes the patent. *See Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991).

### B.    The District Court Failed to Construe Disputed Terms.

Claim construction is a question of law, which this Court reviews *de novo*. *Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1247 (Fed. Cir. 2008). It remains well settled that to construe a claim term, a court "must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing." *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331,1335 (Fed. Cir. 2008).

The District Court acknowledged that certain claim terms – "attached," and "not less than" in connection with the "connecting force" – required construction to determine the meaning and scope of the claims. A22-25. Yet, the court construed only the term "attached," giving it its plain and ordinary meaning, and then proceeded to apply the element "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water" to the accused product, "irrespective of the interpretation of these claim terms." A24.

The District Court's failure to construe all disputed claim terms requires reversal. A district court's reliance "on an erroneous claim construction in granting injunctive relief…may well constitute an abuse of discretion requiring this [C]ourt

22

to vacate the injunction." *Chamberlain*, 516 F.3d at 1339 (citations omitted). Indeed, this Court has warned that "a correct claim construction is almost always a prerequisite for imposition of a preliminary injunction." *Id.* at 1340. Likewise, the omission of a claim construction analysis strongly counsels in favor of remand because it precludes meaningful review of that court's decision. *See, e.g.*, *Graco, Inc. v. Binks Mfg. Co.,* 60 F.3d 785, 791 (Fed. Cir. 1995).

The R&R, and District Court order adopting it, refused to construe the terms "not less than" and "connecting force" in claim 1, even though both terms were disputed. This conclusion contravenes settled precedent, which compels the court to offer at least a preliminary construction of disputed terms that are relevant to the infringement analysis. *See, e.g.*, *Bell & Howell Document Mgmt. Products Co. v. Altek Sys.,* 132 F.3d 701, 708-709 (Fed. Cir. 1997) (remanding case to district court because court's preliminary claim construction was erroneous); *Shuffle Master, Inc. v. Vending Data Corp*., 163 Fed. Appx. 864, 868-869 (Fed. Cir. 2005) (vacating preliminary injunction and holding that "a district court in a preliminary injunction proceeding has the duty to determine whether the movant is likely to prevail on the merits, and if that question turns on a contested issue of claim construction, the court must give the claim construction issue the attention necessary to determine the likelihood of success"). As discussed below, the District Court's finding of literal infringement included its determination that the shaking

23

limitation was met. A24-25; A40-41. Where, as here, the likelihood of plaintiffs' success on the merits "depends fundamentally on the meaning of the asserted claim," *Chamberlain Group*, 516 F.3d at 1339-40, the District Court erred when it applied the shaking element without construing the disputed claim terms.

### C.    The District Court Misapplied The Claim To Read On The Balloon Bonanza Product.

Even assuming for the sake of argument that the District Court properly construed the claim language, the court's finding of likely infringement still was clearly erroneous.

*First*, no record evidence supports the court's finding that Balloon Bonanza's tubes are "attached" to its housing. The District Court preliminarily construed the term "attached" by using the plain and ordinary meaning of "connected or joined to something." A24 (citing Merriam-Webster Dictionary, ("connected or joined to something")); A40. Under that construction, the Balloon Bonanza product would infringe the '066 Patent if each hollow tube were connected or joined to the housing at a respective one of the holes at the second end of the housing. Without citation to any evidence, the District Court summarily stated that "the tubes of the Balloon Bonanza product are connected to the housing holes in order for the product to function properly." A24. But, as Appellants' expert Professor Ken Kamrin explained, and as is apparent upon close inspection of the accused product, the tubes do not connect or join to the housing, but rather

slide in and out of the holes in the common face of the housing. A1460-61 ¶ 29 ("There is no point of attachment…. The tubes are not attached to any holes."); *see also* A1443, A1960.

*Second*, the District Court referred to Balloon Bonanza's instructions "give the balloons a shake to release" to find that the product most likely met the shaking limitation. A25. This finding is clear error. To infringe, each claim limitation must be present in the *accused product*, without regard for what the product's instructions may say. *See MicroStrategy Inc. v. Bus. Objects, S.A.,* 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim). As a corollary, a limitation is not met merely because it is described in a product's instructions. *Cf. Vita-Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1328 (Fed. Cir. 2009) (rejecting argument that instructions encouraged infringing use of a product).

The evidence presented to the District Court demonstrated that the Balloon Bonanza product does not meet the shaking limitation. The elastic fasteners on the Balloon Bonanza product provide a "connecting force" that is *less than* the weight of substantially filled balloons; as a result, balloons can detach without being shaken. As observed by Appellants' expert, "if the 'connecting force" were "equal to" or more than the weight of a substantially filled container, then the balloons could not fall off "without some external force" or shaking." A1462 ¶ 34. The

25

videos that the District Court reviewed during the evidentiary hearing show that "the balloons naturally fall off of the tubes when the balloons are substantially filled with water." *Id.* This detachment could not occur unless the connecting force is *less than* the weight of the balloons when substantially filled with water. *Id.* Thus, the Balloon Bonanza product cannot meet the element that each elastic fastener is configured to provide a connecting force that is *not less than* the weight of one of the containers when substantially filled with water. Because the balloons on the Balloon Bonanza product detach without shaking, the District Court committed clear error when it relied on Balloon Bonanza's instructions to find that the accused product met the shaking limitation. A25.

Although the District Court acknowledged that Appellants raised non-infringement arguments, it improperly truncated the required two-step infringement analysis. The Court did not construe all the contested claim terms or even offer a preliminary construction of "connecting force" or "substantially filled," and its analysis of the claim elements was flawed. Consequently, this Court should reverse the lower court's decision. *See Graco*, 60 F.3d at 791 ("The entire omission of a claim construction analysis from the opinion, and the conclusory factual findings on infringement, each provide an independent basis for remand.").

## IV.    THE DISTRICT COURT'S FINDING THAT APPELLEES DEMONSTRATED IRREPARABLE HARM WAS CLEARLY ERRONEOUS.

The R&R found that Appellees had suffered irreparable harm due to price erosion, consumer confusion, and damage to reputation. A32-36. The R&R conceded, however, that "[b]ecause this action was filed the same day as the issuance of the '066 Patent and this motion was filed only several days later, the majority of Plaintiff's examples predate the issuance of the '066 Patent." A35. Although the court attempted to mitigate this error by noting that Appellees allegedly presented evidence of ongoing consumer confusion and asserted damage to reputation, this evidence cannot remedy the District Court's error.

Generally, "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). But irreparable harm must be measured from the time the patent issues, not from a prior date. That is because the property right to exclude others does not arise before the patent issues. *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479, 483 (Fed. Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent; thus, disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance.").

27

Here, the District Court departed from this settled legal standard. In support of its irreparable harm finding, the R&R listed multiple events that transpired *before* the '066 Patent issued on June 9, 2015.[3] For example, it is undisputed that Appellees set their price *before* April 2015, i.e. *before* the patent issued.  A110-11. Appellees set their price based on competition that they could not exclude under the patent law. This voluntary decision cannot be transformed into price erosion caused by patent infringement. Because Appellees set their lower price *before* the patent issued, no nexus exists between their price-setting decision and any alleged patent infringement. The district court had no other evidence that could bear even remotely on price erosion. Appellees offered no evidence of markets, channels of trade, or competition within such markets. Zuru's price erosion argument was based entirely on speculative testimony that it would have sold its product at a higher price if Telebrands were not in the market. A274. But, Appellees testimonial evidence that they *may have wanted to sell* to retail stores at a higher price is not the same as evidence that retailers *would have paid* any higher price. Indeed, Ms. Mowbray admitted that retailers set the price that they made this decision before the '066 Patent issued, and that Zuru does not control the retail

---

[3]  The District Court also based its findings on consumer confusion, harm to reputation and loss of goodwill on a select set of Amazon product reviews and emails from customers, which predate the '066 Patent's issuance. Appellee's presented testimony, however, that they have received no negative press.  A90.

price of its product. A114. In light of Appellees' admission that they priced their

product before June 2015, the District Court abused its discretion in relying on

alleged price erosion to find irreparable harm.

## CONCLUSION

For the reasons set forth above, Appellants request that the Court vacate the

District Court's preliminary injunction order.


Dated:  March 4, 2016


<table>
<tr><td>

/s/ Robert T. Maldonado
Robert T. Maldonado
Elana B. Araj
**COOPER & DUNHAM LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 278-0506
Facsimile: (212) 391-0525
rmaldonado@cooperdunham.com
earaj@cooperdunham.com

*Attorneys for Appellants Telebrands
Corp. and Bed Bath & Beyond Inc.*

</td><td>

/s/ D. Michael Underhill
David Boies
**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

D. Michael Underhill
Amy L. Neuhardt
Stacey K. Grigsby
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
munderhill@bsfllp.com
rmeyer@bsfllp.com
aneuhardt@bsfllp.com
sgrigsby@bsfllp.com

*Attorneys for Appellant Telebrands Corp.*

</td></tr>
</table>

# **CERTIFICATE OF COMPLIANCE**

I, Stacey K. Grigsby, in reliance upon the word count of the word-processing system used to prepare the brief, certify that the "CORRECTED BRIEF FOR APPELLANTS TELEBRANDS CORP. AND BED BATH & BEYOND, INC." excluding the table of contents, table of authorities, certificate of service, and any certificates of counsel, contains 6,629 words. This brief was prepared using Microsoft Word 2010.

Dated: March 8, 2016                    /s/ Stacey K. Grigsby
                                        Stacey K. Grigsby

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 8, 2016, I electronically filed a copy of this

"CORRECTED BRIEF FOR APPELLANTS TELEBRANDS CORP. AND BED

BATH & BEYOND, INC." with the Clerk of the Court using the Court's Case

Management/Electronic Case Filing ("CM/EMF") System, which will send a

notification of electronic filing ("NEF") to all counsel of record who are registered

CM/EMF users, including counsel of record for the Appellees.


Dated:  March 8, 2016          /s/ Stacey K. Grigsby
                               Stacey K. Grigsby

31