# ADDENDUM

Addendum
Table of Contents

Page

Report and Recommendation of United States Magistrate Judge,

filed Sept. 11, 2015 ................................................................................................**A00017**

Order Adopting Report and Recommendation of Magistrate Judge,

filed Dec. 2, 2015................................................................................................**A00039**

Order on Injunction, filed Dec. 22, 2015 ..........................................................**A00043**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

**TINNUS ENTERPRISES, LLC, and**
**ZURU LTD.**

**Plaintiffs,**

**v.**

**TELEBRANDS CORP., et al.,**

**Defendants.**

§
§
§
§
§
§
§
§
§
§

**No. 6:15-cv-00551 RWS-JDL**

**JURY DEMANDED**

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court is Plaintiffs Tinnus Enterprises, LLC's ("Tinnus") and ZURU Ltd.'s

("ZURU") Motion for a Preliminary Injunction. (Doc. No. 9.)  Defendants Telebrands Corp.

("Telebrands") and Bed Bath & Beyond, Inc. ("Bed Bath") filed a response (Doc. No. 29), to

which Plaintiffs filed a reply (Doc. No. 34), and Defendants filed a sur-reply (Doc. No. 38).  The

Court held a hearing on the Motion on August 28, 2015.  After considering the parties'

arguments, the Court recommends that Plaintiffs' Motion for a Preliminary Injunction (Doc. No.

9) be **GRANTED**.

## BACKGROUND

On June 9, 2015, Plaintiffs filed the instant action against Defendants, alleging

infringement of U.S. Patent No. 9,051,066 ("the '066 Patent").  The '066 Patent is entitled

"System and Method for Filling Containers with Fluids" and issued on June 9, 2015, to Tinnus.

'066 Patent.  Tinnus is a company based in Plano, Texas, that is founded and solely owned by

the inventor of the '066 Patent, Josh Malone.  (Doc. No. 9-2, Declaration of Josh Malone, at ¶ 1)

("Malone Decl.").)  The '066 Patent is based on Josh Malone's invention of a new toy product

1

now known as "Bunch O Balloons." *Id.* at ¶ 2.   The Bunch O Balloons device is a hose attachment that is fitted with either 35 or 37 Balloons. *Id.* at ¶ 3.   When the device is attached to a hose and the water is turned on, the balloons will fill and seal themselves upon release, allowing someone to fill up to 100 water balloons in 60 seconds. *Id.* at ¶¶ 2-3.   After developing a successful prototype, Mr. Malone caused Tinnus to file for a patent application on February 7, 2014, which eventually issued as the '066 Patent on June 9, 2015. *Id.* at ¶ 4.

Mr. Malone began taking steps to manufacture his Bunch O Balloons product in March 2014, and the first batch of product was manufactured in June 2014. *Id.* at ¶ 5.   To raise funds to continue the manufacture of his product, Mr. Malone launched a Kickstarter campaign on July 22, 2014. *Id.* at ¶ 6.   Within 30 days, the project funding reached nearly $1 million and the Kickstarter video had reached 2.9 million views. *Id.* at ¶ 8; Preliminary Injunction Transcript ("Prelim. Inj. Tr.") at 21:17-22:10. On the very first day the Kickstarter campaign launched, Tinnus received a total of 598 public orders for the product, selling out of the initial production batch.   *Id.* at ¶ 11.   Also on that same day, Mr. Malone's Bunch O Balloons invention was featured on *Sports Illustrated's* on-line magazine.   *Id.* at ¶ 9.   From there, Mr. Malone continued to gain national attention for his invention.   Both *Time* magazine and *People* magazine covered the Bunch O Balloons product on their respective websites, and Mr. Malone appeared on nationally-televised broadcasts of *Good Morning America* and the *Today Show*. *Id.*   The Bunch O Balloons product also went viral on YouTube, with approximately 9.6 million views. *Id.* at ¶ 10.

Selling at a price of approximately $17, Tinnus shipped the first batch of Bunch O Balloons product on August 29, 2014. *Id.* at ¶ 13.   Tinnus had also begun negotiating to partner with ZURU to provide the manufacture, marketing, and sale of Bunch O Balloons. *Id.* at ¶ 14.

On August 19, 2014, Tinnus and ZURU entered into an exclusive license agreement where Tinnus agreed to license ZURU any present or future patent rights owned by Tinnus related to the Bunch O Balloons product. *Id.* at ¶ 15.

In December of 2014, Mr. Malone became aware that Telebrands was advertising and offering for sale a product called "Balloon Bonanza," which appeared to be an exact replica of his invention. *Id.* at ¶ 16. Upon investigation, Mr. Malone determined that Balloon Bonanza was an unauthorized copy of his Bunch O Balloons product and Tinnus and ZURU therefore sent a cease and desist letter to Telebrands on December 16, 2014. *Id.* at ¶ 17. On January 27, 2015, ZURU then filed an action against Telebrands in the District of New Jersey alleging trade dress infringement, trademark infringement, copyright infringement, and fraud pursuant to the New Jersey Consumer Fraud Act. (Doc. No. 29, at 3.)  On the same day the '066 Patent issued, Plaintiffs filed the instant action in this Court alleging that the Balloon Bonanza product infringes the '066 Patent. (Doc. No. 1.) Thereafter, on June 18, 2015, Plaintiffs filed the instant motion for a preliminary injunction. (Doc. No. 9.)

## LEGAL STANDARD

"[B]efore the issues of fact and law have been fully explored and finally resolved, the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1344–45 (Fed. Cir. 2008) (internal quotations omitted); *see Techradium, Inc. v. Blackboard Connect Inc.*, No. 2:08-cv-214, 2009 WL 1152985, at *2 (E.D. Tex. Apr. 29, 2009).

The Court may grant an injunction to "prevent the violation of any right secured by patent." 35 U.S.C. § 283. "The decision to grant a preliminary injunction is within the discretion of the district court." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359,

A00019

1363 (Fed. Cir. 2001); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009); *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (with respect to the closely related topic of permanent injunctions, the Supreme Court recently noted that "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion").

"A district court may enter a preliminary injunction based on its consideration of four factors: (1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Abbott Labs.*, 566 F.3d at 1298 (internal citations omitted) (citing *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1353–54 (Fed. Cir. 2008)).

To establish likelihood of success on the merits, the patentee seeking preliminary injunction must show that it will likely prove infringement, and that it will likely withstand any challenges to the validity of the patent. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009); *see Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).

The test for infringement at the preliminary injunction stage is the same as the usual test set forth in *Graver Trank & Mfg. Co., Inc. et al. v. Linde Air Prod. Co.*, which requires the accused device be evaluated in light of the properly construed claim. *Graver*, 339 U.S. 605 (1950); *see Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005). However, demonstrating likelihood of success on the merits does not lead to a presumption of irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)) ("We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the

4

A00020

presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief.")

With respect to validity, "if the alleged infringer raises a substantial question concerning validity, *i.e.*, asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Helifix Ltd. V. Block-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000). "Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006); *Amazon.com Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1358 (Fed. Cir. 2001). The party seeking preliminary injunction may support validity "by showing that the patent in suit [has] successfully withstood previous validity challenges in other proceedings. Further support for such a clear case might come from a long period of industry acquiescence in the patent's validity." *Amazon.com Inc.*, 239 F.3d at 1358 (Fed. Cir. 2001).

Irreparable harm may be demonstrated by showing: (1) infringement has caused or will cause price erosion or loss of market share; (2) deprivation of the exclusive right to the patented invention; or (3) that the accused infringer is incapable of paying a damages award. *Bosch*, 659 F.3d at 1156. Loss of revenue and goodwill may also be "incalculable and irreparable." *Smith & Nephew, Inc v. Arthrex, Inc.*, No. 2:07-cv-335, 2010 WL 2522428, at *2–3 (E.D. Tex. Jun. 18, 2010) (*citing i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010)). Damage to a reputation as the "sole source" in the United States may also be irreparable harm. *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 324 F. Supp. 715, 724 (S.D. Fla. 1972), *aff'd*, 460 F.2d 1096 (5th Cir. 1972).

The balance of hardships weighs the "magnitude of the threatened injury to the patent owner . . . in light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).

"Although the public interest inquiry is not necessarily or always bound to the likelihood of success of the merits, in [many cases,] absent any other relevant concerns . . . the public is best served by enforcing patents that are likely valid and infringed." *Abbott Labs. Inc.*, 452 F.3d at 1348.

## DISCUSSION

### A. Likelihood of Success on the Merits

To succeed on the first prong, Plaintiffs must show that they will likely prove that the Balloon Bonanza product infringes the '066 Patent; and that the infringement claim will likely withstand Defendants' validity challenges to the '066 Patent. *Amazon.com*, 239 F.3d at 1350.

#### a. Infringement

Plaintiffs contend that it is more likely than not that Defendants' Balloon Bonanza product infringes the '066 Patent. (Doc. No. 9, at 7.) The '066 Patent contains one independent claim, claim 1, which recites:

> 1. An apparatus comprising:
> a housing comprising an opening at a first end, and a
>     plurality of holes extending through a common face of
>     the housing at a second end;
> a plurality of flexible hollow tubes, each hollow tube
>     attached to the housing at a respective one of the holes at
>     the second end of the housing;
> a plurality of containers, each container removably
>     attached to a respective one of the hollow tubes; and
>     a plurality of elastic fasteners, each elastic fastener clamping
>     a respective one of the plurality of containers to a
>     corresponding hollow tube, and each elastic fastener

> configured to provide a connecting force that is not less
> than a weight of one of the containers when substantially
> filled with water, and to automatically seal its respective
> one of the plurality of containers upon detaching the
> container from its corresponding hollow tube, such that
> shaking the hollow tubes in a state in which the containers
> are substantially filled with water overcomes the
> connecting force and causes the containers to detach
> from the hollow tubes thereby causing the elastic fasteners
> to automatically seal the containers,
>> wherein the apparatus is configured to fill the containers
>> substantially simultaneously with a fluid.

'066 Patent at 6:30-53.

Plaintiffs contend that the Balloon Bonanza product literally infringes claims 1, 3-4, 7-9, and 14 of the '066 Patent. (Doc. No. 9, at 8.)  In support, Plaintiffs submitted a claim chart mapping each and every limitation of the asserted claims to features of the Balloon Bonanza product. (Doc. No. 9-6.)  To show that each claim limitation is met, Plaintiffs' claim chart relies on images of the Balloon Bonanza product from the Balloon Bonanza website, actual photographs of the product itself, images from the product instruction manual, and other screenshots of the website and related product videos.  (Doc. No. 9-6.)  Plaintiffs also submitted the actual Balloon Bonanza product and a DVD of the Balloon Bonanza video in support.

In response to Plaintiffs' showing, Defendants contest only that the evidence provided for each limitation is "improper and irrelevant" because the images are only screenshots, or are blurry, or from the product instructions, not the actual product.  (Doc. No. 29, at 7-8.)  In fact, the only substantive non-infringement argument presented by Defendants was first raised in Defendants sur-reply (Doc. No. 38, at 4), and then argued at the hearing: that tubes of the Balloon Bonanza product are not attached to the housing. Prelim. Inj. Tr. at 91:1-6.

Defendants' primary non-infringement argument poses a claim construction issue as to the meaning of the word "attached."  In essence, Defendants argue that the tubes are not

"attached" to the housing because they are not permanently affixed to the housing at any respective hole—that is, the tubes can slide in and out of the holes in the housing. (Doc. No. 38-3, Decl. of Dr. Ken Kamrin, at ¶ 29 ("Kamrin Decl.") ("the BALLOON BONANZA product shows holes in the end of a hose attachment portion, it does not show that the tubes are attached to the holes. Instead, it shows that the tubes extend through the holes.")  While Defendants have presented what perhaps may ultimately be a claim construction dispute as to the meaning of the word "attached," Defendants' argument fails to rebut Plaintiff's showing that this limitation is likely met.  Defendants have not pointed to anything in the claims or specification to support their interpretation of the meaning of the word "attached." This is of particular concern where Defendants' interpretation of "attached" appears to run contrary to the plain and ordinary meaning of the word.  Merriam-Webster Dictionary,  http://www.merriam-webster.com/dictionary/attached ("connected or joined to something").  Indeed, the tubes of the Balloon Bonanza product are connected to the housing holes in order for the product to function properly—the housing attaches to the hose at one end and sends water through the holes at the other end, which are connected to the hollow tubes in order to fill the balloons with water.

Defendants also submitted an expert affidavit to their sur-reply, the Kamrin Declaration, in support of another new non-infringement argument.  Though Defendants did not present any argument on this position, Dr. Kamrin contends that Plaintiffs cannot show that the element "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water" is met. Kamrin Decl. at ¶ 30.  Dr. Kamrin presents a dispute and disagreement with Plaintiffs' expert as to the meaning of "not less than" in connection with the "connecting force." Id. at ¶¶ 31-34.  However, irrespective of the interpretation of these claim terms, Defendants' non-infringement argument, as asserted by its

8

expert, is premised on the fact that for the Balloon Bonanza product, "[s]haking is *not* required to detach the balloons from the tubes."  *Id.* at ¶ 34 (emphasis in original). However, the instruction manual for the Balloon Bonanza product, which is included with the product in the product box, expressly recites at step 4 "[t]urn off water and give balloons a shake to release."  Accordingly, Defendants' expert's opinion appears to be at odds with the manual included with the sale of the Balloon Bonanza product.  Regardless, to the extent the dispute will center upon whether shaking is *required,* it is at least the case that shaking is instructed to release the balloons.  Therefore, this argument is insufficient to show that Plaintiffs are not likely to succeed on their infringement claim.

Accordingly, the Court finds that Plaintiffs are likely to show that the Balloon Bonanza product infringes at least claim 1 of the '066 Patent.

### b. Invalidity

As a preliminary matter, Defendants did not substantively brief their invalidity arguments, nor did they present their arguments at the hearing.  Instead, Defendants wholesale cite to an expert declaration and their eighty page Post-Grant Review petition in support. (Doc. No. 29, at 10-11.)  This approach places an enormous burden on this Court to sift through numerous exhibits and hundreds of pages to ascertain the basis for Defendants' invalidity arguments.  Particularly, when the Court is considering whether to issue a preliminary injunction and the Court affords the parties the opportunity for a full hearing, the parties are expected to use that time to build the record and present their arguments at the hearing. Defendants chose to present no witnesses at the hearing and failed to make any substantive argument as to the invalidity of the '066 Patent.  While Defendants' approach is particularly

A00025

inefficient and unhelpful, the Court nonetheless has considered Defendants' positions from the briefing for purposes of deciding this motion.

Defendants contend the '066 Patent is invalid as indefinite under 35 U.S.C. § 112 and obvious under 35 U.S.C. § 103. (Doc. No. 29, at 9.) With respect to § 112, Defendants specifically argue that the term "substantially filled" is indefinite, and that the '066 Patent is non-enabling with respect to the term "connecting force." (Doc. No. 29, at 10.)   Plaintiffs contend that the patent examiner already properly determined that the terms "substantially filled" and "connecting force" are not indefinite or lacking enablement. (Doc. No. 34, at 3.)

First, with regard to the term "substantially filled," Defendants argue that the term is indefinite primarily because the term "substantially" requires individual subjectivity to determine when the "desired size" has been reached. (Doc. No. 29, at 10.)  However, the term "substantially" is not *per se* indefinite, and Defendants have not raised a substantial question as to the validity of the '066 Patent through their subjectivity argument.   *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) (holding that the term "'substantially constant wall thickness' does not of itself render the claims of the [asserted] patent indefinite" because "[i]t is well established that when the term 'substantially' serves reasonably to describe the subject matter so that its scope would be understood by persons in the field of the invention, and to distinguish the claimed subject matter from the prior art, it is not indefinite.")  Here, the claims of the '066 Patent provide specific parameters regarding when the containers are "substantially filled."  For example, claim 1 of the '066 Patent provides that the containers are substantially filled with water when the "water overcomes the connecting force and causes the containers to detach from the hollow tubes." '066 Patent at 6:48-52. Thus, Defendants have not

10

raised a substantial question concerning the validity of the '066 Patent based on the claim term

"substantially filled" being indefinite.

Defendants also have not raised a substantial question as to whether the claims of the

'066 Patent are properly enabled because of the use of the term "connecting force."  Defendants

argue that the claim is not enabled because the '066 Patent never describes the type of force

where the "connecting force" is not less than the weight of the container—*i.e.* where the

container will not detach. (Doc. No. 29, at 10.)   However, Defendants fail to address the

remainder of claim 1, which specifically recites how the containers are detached from the tubes

where the connecting force is not less than the weight of the containers when substantially filled

with water.  Indeed, the claim goes on to recited that that "***shaking*** the hollow tubes in a state in

which the containers are substantially filled with water ***overcomes the connecting force*** and

causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to

automatically seal the containers." '066 Patent at 6:46-52 (emphasis added).  This claim is

consistent with the detailed description provided in specification of the '066 Patent. *See, e.g.*,

'066 Patent at 3:52-55 ("[i]n another example embodiment, the connecting force holding filled

containers 18 to tubes 16 may be overcome by an upward acceleration on tubes 16, for

example, when they are shaken.")   Accordingly, reading the claim in its full context,

Defendants have not raised a substantial question as to validity for lack of enablement.

With regards to obviousness, Defendants cite generally to their petition for Post-Grant

Review ("PGR"), which identifies five prior art references in support. (Doc. No. 29, at 10.)

Specifically, Defendants contend that claim 1 is obvious over U.S. Patent No. 5,826,803

("Cooper") in view of U.S. Patent Application US 2013/0118640 ("Saggio"). (Doc. No. 29-9, at

48-58.)  Defendants concede that neither reference contains each and every limitation of claim

1 of the '066 Patent as Cooper does not disclose any containers to be filled and Saggio does not

disclose a plurality of holes through a common face of the housing and a plurality of flexible

hollow tubes.

Upon a review of the PGR petition and the references contained therein, the Court

cannot find that Defendants have raised a substantial question as to the validity of claim 1 of

the '066 Patent as obvious over Cooper in view of Saggio.  Particularly, neither Cooper nor

Saggio appear to disclose the "elastic fasteners" as claimed in the '066 Patent. Defendants

contend that Saggio discloses this limitation because it discloses an "inner membrane" and

"seal" that internally closes off the balloon through a "closure member" when the balloon is

compressed or rotated.  Saggio at [0019].  Saggio does not disclose any external elastic fastener.

This draws an important distinction between the claimed invention and the prior art.  Because

the '066 Patent claims each "elastic fastener clamping a respective one of the plurality of

containers to a corresponding hollow tube," and "each elastic fastener configured to provide a

connecting force that is not less than a weight of one of the containers when substantially filled

with water," it is critical that the elastic fastener must provide the ability to ***clamp*** the

containers to the tubes and to provide the requisite claimed "***connecting force***." '066 Patent at

6:39-45. Based on Defendants' PGR submissions, it is not clear how the inner membrane of

Saggio would indeed work to clamp the balloons to the tubes of Cooper and provide the

claimed "connecting force," particularly when the inner membrane of Saggio extends along

nearly the entire inner perimeter of the whole balloon body, as shown below in Figure 2:



Saggio Fig. 2.

Ultimately, the claim term may be disputed with regards to whether the "elastic fastener" must be external to the container, but regardless, at this stage, Defendants have not provided the Court a clear picture as to how the disclosures of Cooper and Saggio render claim 1 of the '066 Patent obvious.

In their PGR petition, Defendants also argue that claim 1 is obvious over Cooper in view of Saggio and U.S. Patent Application No. 2005/0004430 ("Lee"). (Doc. No. 29-9, at 63-68.) Defendants contend that Lee discloses the "elastic fastener" element of claim 1 because Lee discloses a rubber band attached to a guide tube that seals and releases the balloon from the guide pipe. (Doc. No. 29-9, at 64, citing Lee at [0033].) However, as discussed above, claim 1

13

critically requires "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water," which enables the "shaking [of] the hollow tubes" to overcome "the connecting force" and ultimately enables the release and sealing of the container. '066 Patent at 6:39-52.   Again, it is not clear from Defendants' submissions that the rubber band disclosed in Lee provides the claimed connecting force.   Indeed, Lee discloses that the balloon is removed by pushing the guide pipe. Lee at [0033] ("[i]n this state, when the pushing handle 8 of the rear portion of the guide pipe 4 is pushed in the direction of the front end, the rubber band is moved in the direction of the front end of the inner guide pipe by a front end of the outer guide pipe and is escaped from the guide pipe.")   Moreover, the invention disclosed in Lee relates to a treatment of obesity. Lee at [0002].  Defendants do not sufficiently describe how a person of ordinary skill in the art would have been motivated to combine Lee with Cooper, which relates to lawn and garden sprinklers, or Saggio, which relates to a water balloon system. Cooper at 1:8-11; Saggio at [0002].

Finally, Defendants contend that claim 1 is obvious over the ZORBZ Replicator in view of: (1) WIPO Publication No. WO 2015/027187 ("Harter"); (2) Saggio; or (3) Lee. (Doc. No. 29-9, at 74-81.)   As an initial matter, the images of the ZORBZ Replicator do not show an elastic fastener that clamps the balloon to a corresponding hollow tube, as Defendants concede. (Doc. No. 29-9, at 77.)   Defendants contend that Harter discloses this claim element because it discloses a "seating shoulder" on the neck of the balloon. *Id.* However, as with the other references discussed, Defendants do not show how the "seating shoulder" of Harter discloses the "elastic fasteners" claimed in the '066 Patent.   Particularly, Harter does not disclose that the "seating shoulder" is designed or used to seal the balloon through a "connecting force." Instead, Harter discloses that the "seating shoulder" is formed at the area where the neck and

14

**A00030**

body of the balloon join so that a "check valve ball" can rest against the "seating shoulder" to seal the balloon. Harter at [0040]. For the reasons discussed above, Defendants have also not shown how Saggio or Lee disclose this element. Accordingly, the Court cannot find that Defendants have raised a substantial question as to obviousness of claim 1 of the '066 Patent based on the combination of these references.

Moreover, even if Defendants are able to make a prima facie showing of obviousness, the Court is concerned with Defendants' conclusory assertion that secondary considerations need not be considered here. The Court finds that secondary considerations will be relevant here where Plaintiffs have set forth evidence of commercial success and copying by Defendants. Of particular concern is that Defendants' Balloon Bonanza product appears to be a near identical replica of Mr. Malone's Bunch O Balloons product and Defendants have not yet contested the fact that the Balloon Bonzana product was copied from Mr. Malone's invention or asserted that Defendants were the first to invent. In light of these relevant secondary considerations, and the shortcomings in Defendants' obviousness combinations, the Court finds that Defendants have failed to raise a substantial question concerning the validity of the '066 Patent as obvious.

Because Plaintiffs will likely be able to show that the '066 Patent is infringed and Defendants have failed to raise a substantial question as to the validity of the '066 Patent, Plaintiffs are likely to succeed on the merits. Thus, the likelihood of success on the merits factor favors granting a preliminary injunction.

**B. Irreparable Harm**

Plaintiffs assert that Telebrands is causing severe and irreparable harm to Plaintiffs by "interfering with ZURU's exclusive patent rights, confusing consumers, interfering with

plaintiffs' market position, causing price erosion, harming plaintiffs' reputation, and causing loss of good will." (Doc. No. 9, at 9.)  Defendants contend that Plaintiffs are not entitled to a preliminary injunction because Plaintiffs delayed in bringing their motion for a preliminary injunction and have not met their burden of showing they are entitled to one. (Doc. No. 29, at 11-13.)  Here, ZURU and Telebrands directly compete with each other and are the only two competitors in the mass water balloon maker market. Plaintiffs have submitted evidence of several types of harm that have arisen as a result of Telebrands's alleged infringing product being on the market.

As an initial argument, Plaintiffs assert concern as to whether Defendants would be able to ultimately pay any damages because of several bankruptcy filings and fraud investigations currently going on by the State of New Jersey against Telebrands. (Doc. No. 9, at 10.)  These allegations, while they may be true, fail to show that Defendants would not be able to ultimately pay damages for patent infringement.  Thus, these unsubstantiated claims do not show irreparable harm.  However, for the reasons discussed below, the Court finds that the remainder of the evidence provided by Plaintiffs shows that Plaintiffs have and will suffer irreparable harm in the absence of a preliminary injunction.

When Plaintiffs first started selling the Bunch O Balloons product in August 2014, they were selling for $17 each. Malone Decl. at ¶ 13, Doc. No. 9-5, at 145.  Telebrands started airing the infomercial for the Balloon Bonanza product at least as early as December 2014, and although they could not confirm at the hearing when they started shipping product, they estimated it was around March 2015. Prelim. Inj. Tr. at 91:16-92:7.  At this time, starting in April 2015, Plaintiffs had reduced the direct order price of the Bunch O Balloons product to $12.99 as the result of a marketing campaign. Mowbray Decl. at ¶ 8; Prelim. Inj. Tr. at 49:25-

50:11; Doc. No. 9-5, at 147.   In the initial infomercials launched by Defendants, Balloon

Bonanza was being advertised for sale at $10. Mowbray Decl. at ¶ 8; Prelim. Inj. Tr. at 50:13-

23.   At that time, ZURU also lowered its retail price to $9.99 as a result of guidance from

wholesale buyers. Mowbray Decl. at ¶ 8; Prelim. Inj. Tr. at 50:13-23.   Since that time, Balloon

Bonanza products have been sold in retail stores for $9.88. (Doc. No. 9-5, at 149-151.)   ZURU

maintains that without Telebrands's infringing product on the market, they would have

maintained a sales price of $12.99 for the Bunch O Balloons product in retail stores. Mowbray

Decl. at ¶ 9; Doc. No. 9, at 12.

As the only two direct retail competitors in this market, it is clear that a pattern of price

erosion has arisen from the sale of both products.  Particularly, the market entry and continually

reduced sale prices of Telebrands's alleged infringing product has driven down the price at

which the Bunch O Balloons product has sold.  Although the price reductions occurred prior to

the issuance of the '066 Patent, the harm that is ultimately irreparable here is the now lowered

price of sale for the present monopoly right.  That is, had Telebrands never come to market with

the alleged infringing product and driven down the price of sale, Bunch O Balloons would have

continued to sell, under patent protection, in retail stores for $12.99. *Douglas Dynamics v.

Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("[w]here two companies are in

competition against one another, the patentee suffers the harm—often irreparable—of being

forced to compete against products that incorporate and infringe its own patented inventions.").

The Court also finds that Plaintiffs have presented additional evidence of consumer

confusion, harm to Plaintiffs' reputation, and loss of goodwill.  It is undisputed that Telebrands

had a lag time in being able to fulfill their orders for the Balloon Bonanza product they were

advertising. Prelim. Inj. Tr. at 91:16-92:7.  At the hearing, Plaintiffs played a recording of a

customer who called ZURU because her product had not shipped but her card had been charged, despite cancelling her order. Prelim. Inj. Tr. at 55:18-56:3.  When the associate on the phone could not find record of the order, the associate inquired further and it was revealed that the invoice on the customer's bill was for the Balloon Bonanza product, not Bunch O Balloons. *Id.*  At the hearing, Ms. Mowbray testified that this is only one of many such calls ZURU received. Prelim. Inj. Tr. at 55:23-56:22.

Plaintiffs further submitted evidence of consumer confusion regarding who the true inventor is from online reviews, including one comment from the website ReviewBeforeYouBuyIt that stated "the inventor of the Balloon Bonanza who invented this product was formerly called Bunch O Balloons." (Doc. No. 9, at 11.) Plaintiffs also submitted several emails to Mr. Malone and Tinnus inquiring whether the Balloon Bonanza product was Mr. Malone's invention or whether it was a knock-off and inquired whether he had licensed his invention to Telebrands. (Doc. No. 9-5, at 27-37, 51-54 (email complaints to Mr. Malone and ZURU of Balloon Bonanza products leaking and/or not filling properly).) Plaintiffs submissions make clear that consumers are not only confused about which product is which, but also mistakenly thinking that the alleged infringing Balloon Bonanza product is Mr. Malone's invention.  Plaintiffs have shown that Mr. Malone's patented invention has been diluted in the minds of the consuming public and that sales of the Balloon Bonanza product has interfered with Bunch O Balloons mindshare and market position.   At the hearing, Plaintiffs provided testimony (and corresponding excerpted reviews from Amazon.com and ToysRUs.com) that showed the customer reviews and ratings for the Bunch O Balloons product are, on the whole, better than those for the Balloon Bonanza product. Prelim. Inj. Tr. at 57:10-59:13.  For this reason, Plaintiff contends the false association between the products has further harmed the

18

**A00034**

reputation of Bunch O Balloons. Prelim. Inj. Tr. at 58:17-59:23; *see also* Doc. No. 9, at 12 (Bed Bath customer review of Balloon Bonanza stating "Great concept but needs better quality parts"). The Court finds that these harms cannot be undone or compensated with monetary damages. Indeed, Plaintiffs will not have a second chance to come to the market for the first time and establish a market share or gain consumer mindshare based solely on the sales of their product.

Because this action was filed the same day as the issuance of the '066 Patent and this motion was filed only several days later, the majority of Plaintiff's examples predate the issuance of the '066 Patent. However, at least several of these harms are still ongoing. For example, according to testimony and evidence provided at the hearing, customer confusion is still ongoing and reviews of the products remain lopsided—with the reviews of Bunch O Balloons being more favorable than that of Balloon Bonanza. Prelim. Inj. Tr. at 57:10-58:21. Indeed, many of the confused consumer comments and negative reviews mistakenly associated with the Bunch O Balloons product still exist online. Moreover, Ms. Mowbray testified that ZURU had just shipped its next wave of Bunch O Balloon products to retail stores for the season. Prelim. Inj. Tr. at 61:3-9. Accordingly, now that the '066 Patent has issued, Plaintiffs have shown a deprivation of the exclusive right to the patented invention through Defendants continued sales of the Balloon Bonanza product.

Finally, Defendants' argument that Plaintiffs delayed filing this motion is unpersuasive. As discussed above, Plaintiffs filed this action the same day the '066 Patent issued. Plaintiffs then filed this motion for a preliminary injunction based on its claims of patent infringement only 9 days later.

Accordingly, the Court finds that Plaintiffs will suffer irreparable harm in the absence of a preliminary injunction. Therefore, this factor also favors granting a preliminary injunction.[1]

## C.  Balance of Hardships

Plaintiffs contend that the balance of hardships favors granting a preliminary injunction for several reasons: (1) Telebrands and Bed Bath are large companies with many products so any harm from the injunction will be minimized; (2) Telebrands took a calculated risk in selling Balloon Bonanza when it knew of Plaintiffs' patent-pending product; and (3) Mr. Malone and his family rely on the sale of Bunch O Balloons as their primary source of income. (Doc. No. 9, at 14.)  Defendants contend that balance of hardships weighs in favor of Defendants because Plaintiffs have not established a likelihood of success or irreparable harm. (Doc. No. 29, at 15.)

Here, as discussed above, Plaintiffs have shown a likelihood of success on the merits and irreparable harm. Plaintiffs further have shown, and Defendants concede, that Defendants were aware of Planitiffs' pending patent rights and went ahead and made the calculated risk to sell the Balloon Bonanza product.  (Doc. No. 29, at 1 (acknowledging the receipt of Plantiffs' cease and desist letter).)   Indeed, this invention and the Bunch O Balloons product is the livelihood of Mr. Malone and his company Tinnus.  Malone Decl. at ¶ 15.  Telebrands has numerous "As Seen on TV" products in addition to Balloon Bonanza.  On balance, the irreparable harm that Tinnus and ZURU will suffer in the absence of a preliminary injunction outweighs the minimal harm Defendants would incur. Accordingly, this factor weighs in favor of granting a preliminary injunction.

---

[1] The Court acknowledges that Defendants have filed a motion to strike the expert opinions of Dr. Smith (Doc. No. 60), which were submitted to support Plaintiffs' showing of irreparable harm.  The evidence submitted with the Smith Report and provided at the hearing are sufficient to show irreparable harm in this case, as discussed herein. Thus, the Court did not need not to consider the admissibility or credibility of Dr. Smith's opinions in determining whether irreparable harm occurred in this case because ultimately the Court did not need to rely on those opinions in rendering its decision.  The most direct evidence was submitted as exhibits to the Smith Declaration and provided via live testimony at the hearing.

### D.  Public Interest

Plaintiffs contend there is a strong public interest that favors the enforcement of patents. (Doc. No. 9, at 15.)  Defendants contend that this factor does not weigh in favor of granting a preliminary injunction because Plaintiffs have not demonstrated they are likely to succeed on the merits and Defendants have established the '066 Patent is not likely to be found valid. (Doc. No. 29, at 15.)  Here, as discussed above, Plaintiffs have shown a likelihood of success on the merits and Defendants have not raised sufficient uncertainty about the validity of the '066 Patent. *Abbott Labs. Inc.*, 452 F.3d at 1348 ("[a]lthough the public interest inquiry is not necessarily or always bound to the likelihood of success of the merits, in this case absent any other relevant concerns, . . . the public is best served by enforcing patents that are likely valid and infringed."). Therefore, this factor also weights in favor of granting a preliminary injunction.

## CONCLUSION

Having found that all four factors favor granting a preliminary injunction, it is **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction (Doc. No. 9) be **GRANTED**.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in this Report. A Party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusion, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P.

A00037

72(b)(2); *see Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en

banc).


**So ORDERED and SIGNED this 11th day of September, 2015.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, and** | § | |
| **ZURU LTD.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. 6:15-cv-00551 RWS-JDL** |
| | § | |
| **TELEBRANDS CORP., et al.,** | § | **JURY DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER ADOPTING REPORT AND
## RECOMMENDATION OF MAGISTRATE JUDGE

The above entitled and numbered civil action was referred to United States Magistrate

Judge John D. Love pursuant to 28 U.S.C. § 636.  The Report and Recommendation of the

Magistrate Judge ("R&R"), which contains his proposed findings of fact and recommendation,

has been presented for consideration (Doc. No. 66).  The Magistrate Judge recommended

granting Plaintiffs' Tinnus Enterprises ("Tinnus") and ZURU Ltd. ("ZURU") Motion for a

preliminary injunction. Defendants' Telebrands Corporation ("Telebrands") and Bed Bath &

Beyond ("Bed Bath") (collectively "Defendants") filed objections to the R&R (Doc. No. 70), to

which Plaintiffs filed a response (Doc. No. 75). The Court reviews the Magistrate Judge's

findings *de novo*. 28 U.S.C. § 636 (A)-(C).

Defendants raise two primary objections to the Magistrate Judge's findings: (1) that the

recommendation does not include any claim construction and improperly shifts the burden of

proof for likelihood of success to the Defendants; and (2) that the factual findings do not support

a showing of irreparable harm. (Doc. No. 70, at 1.)  With regard to claim construction,

Defendants mischaracterize the Magistrate Judge's findings by claiming no claim construction

1

analysis was conducted.  From the papers and argument presented by the parties, the Magistrate Judge identified only two potential claim construction disputes regarding the terms "attached" and "connecting force," both of which were untimely raised by Defendants for the first time in their sur-reply.  (Doc. No. 66, at 7-9.)  Regardless, the Magistrate Judge fully considered Defendants' untimely arguments and accorded the term "attached" its plain and ordinary meaning at this stage, and found that regardless of the interpretation of the term "connecting force," Plaintiffs were likely to prove infringement. (Doc. No. 66, at 8-9.)  The Court agrees with the Magistrate Judge's findings.

With regard to infringement, Defendants argue that the R&R relied on insufficient evidence of infringement set forth by Plaintiffs. (Doc. No. 70, at 2.)  The Magistrate Judge expressly set forth that he reviewed a claim chart submitted by Plaintiffs that maps each and every limitation of at least independent claim 1, among other asserted claims, to the features of the Balloon Bonanza product.  (Doc. No. 66, at 7.)  Moreover, the Magistrate Judge considered the submissions of the actual Balloon Bonanza product and Plaintiffs' DVD of the product in support. (Doc. No. 66, at 7.)   The Magistrate Judge then carefully considered each non-infringement argument set forth by Defendants, and concluded that Plaintiffs were likely to prove infringement of at least the asserted independent claim 1 of the '066 Patent. (Doc. No. 66, at 7-9.)  Based on the evidence contained within Plaintiffs' claim chart, the actual product, and the DVD tutorial, the Court agrees that Plaintiffs provided sufficient evidence to show that they were likely to prove infringement of at least the asserted independent claim 1 of the '066 Patent.

The Magistrate Judge also did not improperly shift the burden to the Defendants. As explained with regard to infringement, the Magistrate Judge first considered Plaintiffs' affirmative evidence, and, finding it sufficient, then carefully considered all of Defendants' non-

infringement arguments.   Upon thorough review of all the evidence, the Magistrate Judge

determined Plaintiffs were likely to show claim 1 of the '066 Patent is infringed.   Such an

approach did not improperly shift the burden to Defendants.   Nor did the Magistrate Judge

improperly shift the burden on validity.   The Magistrate Judge went through all of the prior art

references cited by Defendants, which Plaintiffs contended were considered by the patent

examiner during the prosecution of the '066 Patent and properly rejected.   (Doc. No. 66, at 9-15.)

Weighing all of that evidence, the Magistrate Judge found that Defendants were not likely to

raise a substantial question as to the validity of the '066 Patent.[1]   Moreover, the Magistrate Judge

was not incorrect in rejecting Defendants' notion that secondary considerations will not be

relevant to this case.   Based on the testimony and evidence presented at the preliminary

injunction hearing, the Magistrate Judge raised his concerns that indeed at least some secondary

considerations were likely to be relevant. (Doc. No. 66, at 15.)   The Court agrees that secondary

considerations are likely to be relevant in this case, and ultimately agrees with the Magistrate

Judge's findings.

       Finally, the Court finds there is sufficient evidence of irreparable harm to support the

Magistrate Judge's finding.   Defendants argue that the R&R incorrectly relies solely on

Plaintiffs' self-serving statements.   However, the Magistrate Judge cited to declarations, emails,

and other relevant documents submitted by the Plaintiffs in support of his finding. (Doc. No. 66,

at 16-18.)   Moreover, regarding the live testimony relied on by the Magistrate Judge, the

Defendants do not attack the credibility of the witness testimony they argue was relied on in

---

[1] Notably, the Magistrate Judge went through a thorough analysis of each asserted combination of  references set
forth by the Defendants, despite the fact that they did not brief such arguments, or present them at the oral hearing,
but simply submitted a 90-page Post Grant Review petition—with numerous attachments—for the Magistrate Judge
to wholesale review. (Doc. No. 66, at 9-15.)  Meanwhile, Plaintiffs maintained that the patent is presumed valid and
that it had already survived review by the patent examiner, where he considered the prior art cited by Defendants
and rejected it. (Doc. No. 34, at 2-3.)

error. (Doc. No. 70, at 4-5.)  The testimony that Defendants cite by Mr. Malone to argue that Telebrands and ZURU are not direct competitors in a two-player market, does not support this contention. (Doc. No. 70, at 5; citing Tr. 41:1-12.)  In that portion of his testimony, Mr. Malone agreed that he compared his Bunch O Balloons product to other water balloon products, and testified that he believed those products are still on the market. (Tr. 41:1-12.)  However, Mr. Malone's testimony does not establish that those products are currently being sold by *direct retailers*, or that they were ever sold in a retail setting.  Defendants provided no evidence that there were other competitors in this marketplace.  Finally, the Court agrees it was permissible for the Magistrate Judge to consider the testimony provided at the hearing regarding customer reviews and customer calls to the ZURU call center.  The testimony relied on by the Magistrate Judge was specifically allowed over Defendants' objections (Tr. at 55:9-11), and ultimately offered in part for demonstrative purposes (Tr. at 56:11-13).  This testimony is consistent with the other evidence presented in the record and cited by the Magistrate Judge. (Doc. No. 66, at 17-19.)

All remaining arguments presented by the Defendants are either new arguments not presented in the original briefing, which the Court will not now consider, or those already properly considered by the Magistrate Judge.  Therefore, the Court adopts the Report and Recommendation of the United States Magistrate Judge as the findings of this Court. All objections are **OVERRULED** and Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 9) is **GRANTED.**

**SIGNED this 2nd day of December, 2015.**

4

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, and** | § | |
| **ZURU LTD.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **No. 6:15-cv-00551 RWS-JDL** |
| **v.** | § | |
| | § | **JURY DEMANDED** |
| **TELEBRANDS CORP., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER ON INJUNCTION

Before the Court is the parties' Joint Motion for Bond Amount and Injunctive Order. (Doc. No. 86.)   On September 11, 2015, the Magistrate Judge issued his Report and Recommendation ("R&R") recommending that Plaintiff's motion for a preliminary injunction be granted. (Doc. No. 66.)  On December 2, 2015, the Court issued an order adopting the findings of the Magistrate Judge and overruling all objections ("Order Adopting"). (Doc. No. 84.) Accordingly, on December 3, 2015, the Court issued an order directing the parties to meet and confer regarding the appropriate amount for a bond and an injunctive order. (Doc. No. 85.)  The parties filed the instant motion on December 10, 2015, setting forth their disputes with regard to the bond amount and the scope of the injunction.  Upon consideration of the arguments, the Court resolves those disputes and sets forth the terms of the injunction herein.

The parties present three main disputes with respect to the issuance of the injunctive order: (1) whether the order should apply to only those with actual notice of this Order or whether it should apply to those with knowledge of "the Court's ruling"; (2) whether the injunction applies generally to the Balloon Bonanza product and any colorable imitation of the

same, or the Balloon Bonanza product and any colorable imitation of the same that infringes the

'066 Patent; and (3) whether bond should be set at $50,000 or $1,000,000.

This Order sets forth the contents and scope of the injunction against Defendants

pursuant to Federal Rule of Civil Procedure 65. Therefore, regarding the scope of notice, the

injunction shall apply to those who receive actual notice of this Order.  The reasons for the

issuance of this injunction are set forth in both the R&R (Doc. No. 66) and this Court's Order

Adopting (Doc. No. 84) and those findings are incorporated by reference herein.  In the R&R,

the Magistrate Judge analyzed the likelihood of success, including a detailed infringement

analysis, with respect to the alleged infringing Balloon Bonanza product and the claims of the

'066 Patent. (Doc. No. 66, at 6–9.)  Accordingly, there is no basis or reasoning set forth to

expand the scope of this injunction beyond the accused infringing product or any colorable

imitation of the same that *infringes the '066 Patent.*

Plaintiffs cite to *Aevoe Corp. v. AE Tech Co.* in support of their proposed inclusion of

only the "colorable imitation of the same" language. 727 F.3d 1375, 1378 (Fed. Cir. 2013).

However, in that case, the Federal Circuit did not "rubber stamp" the appropriateness of such

language for issuing an injunction in a patent case, but merely found that the addition of this

language by the district court did not amount to a modification of the injunction that would

provide jurisdiction to the appellate court. *Id.* at 1384. Indeed, in that case, the parties previously

agreed to have that language removed because such language was appropriate for enforcing

trademark rights, not patent rights. *Id.* at 1382.  It was only during the contempt proceedings,

where a central inquiry is whether a new product is "colorably different," that the court modified

the injunction to include the "colorable imitation" language after finding the defendants in

contempt. *Id.* Here, there is no basis for such an inclusion of language where the Court only

analyzed the patent rights asserted. The scope of the injunction must therefore be limited only to those products that infringe the '066 Patent—the basis for which the injunction was granted.  The "colorable imitation" language plausibly expands the scope beyond infringing products to those that merely look similar.

Finally, with respect to the bond amount, Defendants request the bond be set at $1,000,000, which estimates the "minimum financial losses" Defendants would suffer if later found to be improperly enjoined. (Doc. No. 86, at 10–11.)  Plaintiffs propose a bond of $50,000 would be appropriate. (Doc. No. 86, at 5.)  Defendants bear the burden of showing the extent of their injury resulting from an injunction prohibiting the sale, or offering for sale, of their Balloon Bonanza product.  *Oakley, Inc. v. Sunglass Hot Inter.*, No. SA CV 01-1065 AHS, 2001 WL 1683252, at *12 (C.D. Cal. Dec. 7, 2001), *aff'd on other grounds*, 316 F.3d 1331 (Fed. Cir. 2003) ("A successful movant for a TRO or preliminary injunction must post security 'for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.'  It is Defendants' burden to reasonably estimate the extent to which they would be damaged if this preliminary injunction were improvidently granted." (quoting Fed.R.Civ.P. 65(c)).  For example, the court in *Oakley* awarded a bond of just $100,000 where defendants requested $5 million and $10 million, because "Defendants [did] not provide evidence to substantiate the necessity of their requested bond amounts."  *Id.* (citing *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1362 (10th Cir. 1990)).

Here, Defendants have provided no evidence to support their request of a $1,000,000 bond. Indeed, Defendants do not now provide any sales figures or evidence of actual or potential losses, nor did they during the preliminary injunction hearing.  Moreover, Defendants appear to agree that they are no longer selling or offering to sell the accused Balloon Bonanza product.

(Doc. No. 86, at 11.)  Defendants appear to primarily dispute a lower bond amount because Plaintiffs' proposed injunction language covers products that do not infringe the '066 Patent. *Id.* However, as discussed above, that language has been rejected by the Court, and the scope of this injunction is limited to those products that infringe the '066 Patent.  Accordingly, having set forth no sound basis for a bond of $1,000,000 where no evidence of actual or potential loss was provided and Defendants are no longer selling the accused product, the Court finds a bond of $50,000 to be appropriate in this case.

Accordingly, for the reasons set forth in Docket Nos. 66 and 84, it is hereby **ORDERED** as follows:

- The Court **FINDS** that Plaintiffs have carried their burden of showing (a) that Plaintiffs will likely succeed on the merits of their patent infringement claim by showing that U.S. Patent No. 9,051,066 ("'066 Patent") is valid and enforceable and that Defendants have infringed the '066 Patent, (b) that Plaintiffs have suffered and will continue to suffer irreparable harm if a preliminary injunction is not granted, (c) that the balance of hardships between Plaintiffs and Defendants favors the Plaintiffs and (d) that the public interest would be served by issuing a preliminary injunction in the present case. (Doc. Nos. 66, 84.)

- Pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 271, 35 U.S.C. § 283, and the inherent equitable powers of the Court, the Court hereby preliminarily **RESTRAINS AND ENJOINS** Defendants, their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with Defendants who receive actual notice of this

A00046

Order by personal service or otherwise from making, using, importing, marketing, advertising, offering to sell, or selling in the United States the Balloon Bonanza product or any colorable imitation of the same that infringes the '066 Patent. *See* Fed.R.Civ.P. 65(d).

- This preliminary injunction shall remain in effect until further order of this Court.

- Plaintiffs are directed to file proof of bond in the amount of fifty thousand dollars ($50,000) within seven business days of this Order. *See* Fed.R.Civ.P. 65(c). The bond shall serve as security for all claims with respect to this preliminary injunction

Pursuant to this Order, the Clerk of Court is directed to terminate the parties' joint motion (Doc. No. 86).

**So ORDERED and SIGNED this 22nd day of December, 2015.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE