**No. 16-1410**

# United States Court of Appeals
# for the Federal Circuit

TINNUS ENTERPRISES, LLC and ZURU LTD.,

*Plaintiffs-Appellees,*

v.

TELEBRANDS CORP. and BED BATH & BEYOND INC.,

*Defendants-Appellants.*

*On Appeal from the United States District Court for the
Eastern District of Texas, 6:15-cv-00551-RWS-JDL (Judge Schroeder)*

## CORRECTED BRIEF FOR APPELLANTS TELEBRANDS CORP. AND BED BATH & BEYOND, INC.

David Boies
**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

D. Michael Underhill
Amy L. Neuhardt
Stacey K. Grigsby
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
munderhill@bsfllp.com
aneuhardt@bsfllp.com
sgrigsby@bsfllp.com
*Attorneys for Appellant Telebrands Corp.*

Robert T. Maldonado
Elana B. Araj
**COOPER & DUNHAM LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 278-0506
Facsimile: (212) 391-0525
rmaldonado@cooperdunham.com
earaj@copperdunham.com
*Attorneys for Appellants Telebrands Corp. and
Bed Bath & Beyond Inc.*

### CERTIFICATE OF INTEREST FOR TELEBRANDS CORP.

Counsel for Appellant Telebrands, Corp. certifies the following:

1. The full name of every party represented by me is: TELEBRANDS CORP.

2. The name of the real party in interest represented by me is: TELEBRANDS CORP.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock in the party represented by me are: NONE.

4. The names of all law firms and partners or associates that appeared for the party represented in the trial court or agency or are expected to appear in this court are:

   **COOPER & DUNHAM**
   Robert T. Maldonado
   Elana Araj

   **LANCE LEE ATTORNEY AT LAW**
   Lance Lee

   **LOVE LAW FIRM PC**
   Gregory Love

   **BOIES SCHILLER & FLEXNER LLP**
   D. Michael Underhill
   Stacey K. Grigsby
   Richard Meyer
   Amy L. Neuhardt

Dated:  March 4, 2016          */s/ D. Michael Underhill*
                              D. Michael Underhill
                              **BOIES, SCHILLER & FLEXNER LLP**
                              5301 Wisconsin Avenue, NW
                              Washington, DC 20015
                              Telephone: (202) 274-1120
                              Facsimile: (202) 237-6131

## <u>CERTIFICATE OF INTEREST FOR BED BATH & BEYOND, INC.</u>

Counsel for Appellant Bed, Bath & Beyond, Inc. certifies the following:

1. The full name of every party represented by me is: BED BATH AND BEYOND INC.

2. The name of the real party in interest represented by me is: BED BATH AND BEYOND INC.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock in the party represented by me are: NONE.

4. The names of all law firms and partners or associates that appeared for the party represented in the trial court or agency or are expected to appear in this court are:

**<u>COOPER & DUNHAM</u>**
Robert T. Maldonado
Elana Araj

**<u>LANCE LEE ATTORNEY AT LAW</u>**
Lance Lee

**<u>LOVE LAW FIRM PC</u>**
Gregory Love

Dated:  March 4, 2016                */s/ Robert T. Maldonado*
                                      Robert T. Maldonado
                                      **COOPER & DUNHAM LLP**
                                      30 Rockefeller Plaza
                                      New York, New York 10112

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE................................................................1

I.     NATURE OF THE CASE ...............................................................1

II.    STATEMENT OF FACTS AND COURSE OF PROCEEDINGS BELOW .2

     A.    The Parties Develop Competing Products. ............................2

     B.    Appellees Obtain A Preliminary Injunction, Relying On
          A Claim Chart As Their Primary Evidence. ..........................4

     C.    The USPTO Finds That The '066 Patent is More Likely Than Not
          Invalid, and Appellants Seek an Emergency Stay of the Preliminary
          Injunction...............................................................................6

SUMMARY OF THE ARGUMENT ......................................................8

ARGUMENT ....................................................................................10

I.     STANDARD OF REVIEW ...........................................................10

II.    THE '066 PATENT IS MORE LIKELY THAN NOT INVALID. .............11

     A.    The Terms "Substantially Filled" and "Connecting Force"
          are Indefinite........................................................................13

     B.    The Claims of The '066 Patent are Obvious In Light of Prior Art. ....16

III.   THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES
     WOULD LIKELY SUCCEED IN PROVING THAT THE BALLOON
     BONANZA PRODUCT INFRINGES THE '066 PATENT. .......................21

     A.    Appellees Did Not Carry Their Burden of Showing Likely
          Infringement. .......................................................................21

     B.    The District Court Failed to Construe Disputed Terms. ....................22

     C.    The District Court Misapplied The Claim To Read On The Balloon
          Bonanza Product...................................................................24

IV.   THE DISTRICT COURT'S FINDING THAT APPELLEES
     DEMONSTRATED IRREPARABLE HARM WAS CLEARLY
     ERRONEOUS. ........................................................................27

CONCLUSION ................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aevoe Corp. v. AE Tech Co., Ltd.,*
  727 F.3d 1375 (Fed. Cir. 2013) ............................................................10

*Altana Pharma AG v. Teva Pharm. USA, Inc.,*
  566 F.3d 999 (Fed. Cir. 2009) .............................................................12

*Alza Corp. v. Mylan Labs., Inc.,*
  464 F.3d 1286 (Fed. Cir. 2006) ...........................................................16

*Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
  678 F.3d 1314 (Fed. Cir. 2012) ...........................................................18

*Bell & Howell Document Mgmt. Products Co. v. Altek Sys.,*
  132 F.3d 701 (Fed. Cir. 1997) .............................................................23

*Celsis in Vitro, Inc. v. CellzDirect, Inc.,*
  664 F.3d 922 (Fed. Cir. 2012) .............................................................27

*Chamberlain Group, Inc. v. Lear Corp.,*
  516 F.3d 1331 (Fed. Cir. 2008) ............................................. 22, 23, 24

*E.I. du Pont de Nemours & Co v. MacDermid Printing Solutions LLC,*
  525 F.3d 1353 (Fed. Cir. 2008) ...........................................................21

*Entegris, Inc. v. Pall Corp.,*
  490 F.3d 1340 (Fed. Cir. 2007) ...........................................................12

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,*
  90 F.3d 479 (Fed. Cir. 1996) ...............................................................27

*Graco, Inc. v. Binks Mfg. Co.,*
  60 F.3d 785 (Fed. Cir. 1995) ......................................................... 23, 26

*Harris Corp. v. Ericsson Inc.,*
  417 F.3d 1241 (Fed. Cir. 2008) ...........................................................22

*In re Clay,*
  966 F.2d 656 (Fed. Cir. 1992) .............................................................18

iv

*In re Schreiber*,
    128 F.3d 1473 (Fed. Cir. 1997) ...........................................................17

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products*, LLC,
    431 F. App'x 884 (Fed. Cir. 2011) ......................................................20

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) .............................................................10

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ...............................................................21

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005) ...........................................................25

*Nautilus, Inc. v. Biosig Ins., Inc.*,
    134 S. Ct. 2120 (2014)..........................................................................13

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991) .............................................................22

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331(Fed. Cir. 2003) ............................................................11

*PHG Techs., LLC v. St. John Companies, Inc.*,
    469 F.3d 1361 (Fed. Cir. 2006) ...........................................................11

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
    549 F.3d 842 ........................................................................................20

*Qingdao Taifa Grp. Co. v. United States*,
    581 F.3d 1375 (Fed. Cir. 2009.............................................................11

*Scientific Plastic Prods. Inc., v. Biotage AB*,
    766 F.3d 1355 (Fed. Cir. 2014) ...........................................................18

*Sepulvado v. Jindal*,
    729 F.3d 413 (5th Cir. 2013) ...............................................................11

*Shuffle Master, Inc. v. Vending Data Corp.*,
    163 Fed. Appx. 864 (Fed. Cir. 2005)...................................................23

*Titan Tire Corp. v. Case New Holland, Inc.,*
   566 F.3d 1372 (Fed. Cir. 2009) .................................................................. 12, 20

*Vita-Mix Corp. v. Basic Holding, Inc.,*
   581 F.3d 1317 (Fed. Cir. 2009) ...........................................................................25

*Wind Tower Trade Coal. v. United States*,
   741 F.3d 89 (Fed. Cir. 2014) ............................................................................11

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)................................................................................................10

## Statutes

35 U.S.C. § 103 .......................................................................................... 4, 8, 13

35 U.S.C. § 112 .......................................................................................... 4, 8, 13

35 U.S.C. § 324 ...................................................................................................20

35 U.S.C. §§ 311-318...........................................................................................20

## Rules

Federal Rule of Appellate Procedure 8 .....................................................................8

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, Appellants' counsel states that they are aware of the following appeal in or from this action that was previously before this Court and is unaware of any other appellate cases pending before this Court or any other courts of appeals:

*In re Telebrands Corps. and Bed Bath & Beyond Inc.*, Misc. No. 2016-106 (Fed. Cir.); Order dated February 24, 2016; Panel: Moore, Linn and Wallach.

*In re Telebrands Corps. and Bed Bath & Beyond Inc.,* No. 2016-1410 (Fed. Cir.); Order dated March 3, 2016; Panel: Moore, Linn and Wallach.

Counsel also states that they are aware of the following related cases, which may directly affect or be directly affected by this Court's decision in this appeal:

*Tinnus Enterprises, et al. v. Telebrands Corp.*, Civ. No. 6:16-cv-33 (E.D. Tex.)

*Tinnus Enterprises v. Wal-Mart Stores*, *Inc.*, Civ. No. 6:16-cv-34 (E.D. Tex.)

*Zuru Ltd. v. Telebrands Corp.*, Civ. No. 2:15-cv-548 (D.N.J.)

*Telebrands Corp. v. Zuru Ltd.*, Civ. No. 2:15-cv-8675 (D.N.J.)

vii

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the District Court's preliminary injunction order pursuant to 28 U.S.C. § 1292(c).

## STATEMENT OF THE ISSUES

1.     Whether the District Court abused its discretion in holding that the Appellants failed to raise a substantial question as to validity of U.S. Patent No. 9,051,066, where the U.S. Patent and Trademark Office ("USPTO") has found that the patent is more likely than not invalid.

2.     Whether the District Court abused its discretion in finding that the Appellees would likely succeed in proving that Balloon Bonanza infringes the '066 Patent, where the court failed to construe all disputed claim terms, improperly shifted the burden of proof, and erroneously concluded that claim 1 reads on the Balloon Bonanza product.

3.     Whether the District Court erred in finding irreparable harm to Appellees based on evidence that predated the issuance of the '066 Patent.

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE

Telebrands Corp., a leading developer and marketer of consumer products, and Bed Bath & Beyond ("Bed Bath"), a retailer, appeal the United States District Court for the Eastern District of Texas's grant of a preliminary injunction prohibiting them from "making, using, importing, marketing, advertising, offering

1

to sell, or selling" Balloon Bonanza or any colorable imitation thereof that infringes the '066 Patent in the United States. A46-47. In June 2015, Appellees Tinnus Enterprises, LLC and Zuru Ltd. sued Telebrands and Bed Bath for alleged infringement of the '066 Patent. Days later, Appellees sought a preliminary injunction against the Balloon Bonanza product, which is used to fill multiple water balloons at the same time. After a hearing, the magistrate judge recommended granting the injunction, and the District Court adopted the recommendation over Appellants' objections. The court entered the preliminary injunction order on December 22, 2015.

## II.    STATEMENT OF FACTS AND COURSE OF PROCEEDINGS BELOW

### A.    The Parties Develop Competing Products.

This appeal concerns products for filling multiple water balloons. During the summer of 2014, Telebrands undertook steps to begin manufacturing, marketing and selling its Balloon Bonanza product, which allows many water balloons to be filled simultaneously. A458. Bed Bath & Beyond is a customer of Telebrands that sold the Balloon Bonanza product in its stores. A458.

Appellee Zuru, a large Chinese toy company, sells a competing product, "Bunch O Balloons." A458. Josh Malone, the named inventor on the '066 Patent, asserts that he developed the concept for Bunch O Balloons in early 2014. In

August 19, 2014, Zuru entered into an exclusive licensing deal with Mr. Malone's small limited liability company, Appellee Tinnus. A268 ¶ 15.

Subsequently, on June 9, 2015, the USPTO issued the '066 Patent to Tinnus. Claim 1 is the only independent claim and provides in its entirety:

> An apparatus comprising of:
>
> > a housing comprising an opening at a first end, and a plurality of holes extending through a common face of the housing at a second end;
> >
> > a plurality of flexible hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing;
> >
> > a plurality of containers, each container removably attached to a respective one of the hollow tubes; and
> >
> > a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube, and each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water, and to automatically seal its respective one of the plurality of containers upon detaching the container from its corresponding hollow tube, such that shaking the hollow tubes in a state in which the containers are substantially filled with water overcomes the connecting force and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers, wherein the apparatus is configured to fill the containers substantially simultaneously with a fluid.

On the day the patent issued, Zuru and Tinnus brought this suit in the Eastern District of Texas. A209-220.

3

On June 22, 2015, Appellant Telebrands filed a petition with the Patent Trial and Appeal Board ("Board") of the USPTO seeking post-grant review of the '066 Patent ("PGR Petition"). Among other things, the PGR Petition argued that: (1) the claims of the '066 Patent are indefinite under 35 U.S.C. § 112; and (2) the asserted claims of the '066 Patent are obvious under 35 U.S.C. § 103, based on the prior art references of Cooper, Saggio and Lee. A547-550; A556-923.

### B.    Appellees Obtain A Preliminary Injunction, Relying On A Claim Chart As Their Primary Evidence.

On June 18, 2015, before the PGR Petition was filed, Appellees moved for a preliminary injunction against the Balloon Bonanza product, claiming that it literally infringed the '066 Patent. A243-264. In support of their request, Appellees did not submit any argument or evidence concerning the validity of the '066 Patent. On the issue of infringement, Appellees submitted a claim chart with one column that recited each element in claim 1, a second column that parroted the language of the '066 Patent, and a third column that included "illustrative" pictures of the Balloon Bonanza product, images from the instruction sheet for the product, and screen shots from the infomercial for the product. A441-452. Appellee's motion and claim chart did not propose any claim constructions or explain *how* those terms applied to the Balloon Bonanza product. Appellees waited until their reply brief to offer an expert declaration on validity and infringement. A243-264.

4

But that declaration also did not offer a construction of any terms. A243-264. Additionally, Appellees did not argue doctrine of equivalents.

In opposition, Telebrands offered evidence that there was a substantial question regarding the '066 Patent's validity, and incorporated all of the arguments and evidence that it submitted to the Board in its PGR Petition, which was extensive. It also argued that the Appellees failed to show entitlement to preliminary injunctive relief, including that the Balloon Bonanza product did not infringe the '066 Patent, and that Appellees had not demonstrated irreparable harm or that the balance of harms or public interest supported a preliminary injunction. A453-473.

In August 2015, the magistrate judge held an evidentiary hearing. A61-180; A9. Appellees did not present any evidence or argument at the hearing about the validity of the '066 Patent, and chose not to call their expert witness to testify. Appellees also did not call a single witness to testify concerning infringement. Instead, Appellees called the named inventor of the '066 Patent, Josh Malone, and Zuru's Chief Operating Officer, Anna Mowbray, who both testified regarding potential harm to Appellees allegedly caused by Appellants' sale of the Balloon Bonanza product. A76-87; A107-120. The magistrate judge subsequently issued his Report and Recommendation ("R&R"), which concluded that Appellees were likely to succeed on the merits, and recommended that the District Court grant the

preliminary injunction. Although the R&R observed that the parties disputed the construction of multiple claim terms, such as "connecting force" and "substantially filled," it declined to construe either term. A22-25. Rather, the R&R construed only the claim term "attached," to which it ascribed the plain and ordinary meaning. A23-24. Further, the R&R did not specify where each claim term is found in the accused Balloon Bonanza product. *Id.* Dismissing the invalidity arguments made in the preliminary injunction briefing and the PGR Petition, the R&R concluded that Appellees did not raise "a substantial question concerning the validity of the '066 Patent." A25; A27-31.

Over Appellees' objections, the District Court adopted the R&R in a four-page decision, on December 2, 2015. A39-42. This opinion did not analyze Appellees' validity arguments beyond observing that the magistrate judge went through the prior art references and approving the magistrate judge's findings of secondary considerations. A25-31. The District Court thus agreed that Appellees "were not likely to raise a substantial question as to the validity of the '066 Patent." A41.

### C.   The USPTO Finds That The '066 Patent is More Likely Than Not Invalid, and Appellants Seek an Emergency Stay of the Preliminary Injunction.

Independent of the proceedings in the District Court, Telebrands challenged the validity of the '066 Patent before the Board by filing the PGR Petition. The

PGR Petition was supported by prior art references and declarations from three experts. A547-550; A556-923. The patent owner, Appellee Tinnus, responded to the PGR Petition and submitted all briefing on the preliminary injunction motion in the District Court, as well as the R&R recommending that the preliminary injunction be granted.

After considering the patent owner's arguments in favor of validity as well as the magistrate judge's R&R, the Board issued its decision on January 4, 2016, in which it instituted post-grant review of the '066 Patent and found all claims of the '066 Patent more likely than not invalid.[1] A181-208. The Board relied on the same evidence and arguments that the District Court had previously rejected. *Id.* Specifically, in its Opposition to Appellees' Motion for Preliminary Injunction in the District Court, Telebrands had included its filings with the Board. A547-550; A556-923.

Citing the January 4, 2016 PGR decision, Appellants promptly moved in the District Court for a stay of the preliminary injunction pending appeal. In addition to emphasizing that the District Court's grant of Appellees' motion for a preliminary injunction could not be reconciled with the subsequent PGR decision, the motion described how Appellees had used the preliminary injunction order to

---

[1] In response to Telebrands' indefiniteness arguments, the patent owner disclaimed claims 7 and 9 of the '066 patent.

threaten Telebrands' customers and to accuse Telebrands' new non-infringing water balloons products, which were not the subject of the motion, of infringement. The magistrate judge denied the motion to stay. A1659-1667. Following issuance of the R&R, Appellees moved in this Court for a stay pursuant to Federal Rule of Appellate Procedure 8. Fed Cir. Case No. 16-1410, Dkt. 18. That motion was denied. Fed. Cir. Case No. 16-1410, Dkt. 28.

## SUMMARY OF THE ARGUMENT

Because the evidence before the District Court demonstrated that the '066 Patent was likely invalid, the court abused its discretion when it issued a preliminary injunction. Appellants' evidence was sufficient to show that the '066 Patent is invalid because all claims are indefinite under 35 U.S.C. § 112 and obvious under 35 U.S.C. § 103. A453-473. Despite this evidence, the District Court incorrectly found that Appellants had not "raised a substantial question concerning the validity of the '066 Patent." A27-31. This conclusion is irreconcilable with the record before the District Court, and the Board's decision, based on a virtually identical record, that all claims of the '066 Patent are more likely than not invalid.

The District Court's finding that Appellants' product more likely than not infringed the '066 Patent is likewise flawed. As a threshold matter, the court's infringement finding is based on an inadequate evidentiary record. Appellees' sole

8

"evidence" of infringement was: (1) a claim chart that alleged in a conclusory fashion that the Balloon Bonanza product met the limitations of claim 1 of the '066 Patent; (2) a sample of the accused product; and (3) screenshots, images, and instruction sheets for the accused product. Appellees never attempted to explain *how or why* the accused product met *every* limitation of claim 1. Yet, without performing even a preliminary claim construction of the disputed terms, the District Court shifted the burden of proof, and found that Appellants had not shown that Appellees were not likely to succeed on the merits. A22-25.

Even assuming that no claim construction was necessary for the disputed claim terms, the District Court improperly concluded that the claim terms read on the Balloon Bonanza product. As Appellees demonstrated below, the Balloon Bonanza product does not meet the limitation in every claim that each hollow tube be "attached" to the housing at the second end. Nor does the product require a user to shake the product to detach the containers from the end of each tube when each is substantially filled.

Furthermore, Appellees offered insufficient evidence of irreparable harm. The majority of Appellees' evidence involved pre-issuance activities. For example, the District Court based its finding of irreparable harm, in large part, on the Appellees' claim of price erosion. But the evidence establishes that Appellees set the price of their now-patented product Bunch O Balloons *before* the '066 Patent

9

issued. The District Court's reliance on price erosion is therefore improper, and Appellees did not meet their burden of showing irreparable harm.

In light of the strong evidence of invalidity, the paucity of evidence offered on infringement and irreparable harm, and the court's refusal to construe, even tentatively, disputed claim terms, this Court should reverse the District Court's preliminary injunction order.

## ARGUMENT

### I.  STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Because the "grant, denial or modification of a preliminary injunction … is not unique to patent law," the Federal Circuit "applies the law of the regional circuit when reviewing and interpreting" a grant of a preliminary injunction. *Aevoe Corp. v. AE Tech Co., Ltd.,* 727 F.3d 1375, 1381 (Fed. Cir. 2013) (citations omitted).

Both the Fifth Circuit and the Federal Circuit agree that, in deciding whether to grant a preliminary injunction, a District Court must consider: "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (citations omitted); *PHG Techs., LLC v. St. John Companies, Inc.,* 469 F.3d 1361,

1365 (Fed. Cir. 2006) (citing *Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331, 1338–39 (Fed. Cir. 2003)). Review of a preliminary injunction is for abuse of discretion. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013). A court abuses its discretion if it commits "a clear error of judgment in weighing the relevant factors or exercise[s] its discretion based on an error of law or clearly erroneous fact finding." *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014) (citing *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009)); *see also Sepulvado,* 729 F.3d at 417.

## II.   THE '066 PATENT IS MORE LIKELY THAN NOT INVALID.

The District Court clearly erred in concluding that Telebrands did not raise a substantial question regarding the validity of the '066 Patent. A26-27. The R&R incorrectly asserted that Telebrands did not "substantively brief their invalidity arguments." A00025. In actuality, Appellants' briefs below demonstrated exactly why the '066 Patent was invalid. A464-467. Moreover, in their opposition to the Appellees' preliminary injunction motion, Appellants incorporated in its entirety the PGR Petition, which detailed Appellants' invalidity arguments even further. The lower court's failure to credit Appellants' invalidity arguments – particularly in light of the PGR decision finding that the '066 Patent is more likely than not invalid – is clear error.

This Court's precedent makes clear that "a patent holder seeking a preliminary injunction bears the ultimate burden of establishing a likelihood of success on the merits with respect to the patent's validity." *Altana Pharma AG v. Teva Pharm. USA, Inc*., 566 F.3d 999, 1005-06 (Fed. Cir. 2009) (citing *Entegris, Inc. v. Pall Corp.,* 490 F.3d 1340, 1351 (Fed. Cir. 2007)). But here, the District Court improperly shifted this burden to Appellants, stating that Appellants purportedly had not "raised a substantial question as to obviousness of claim 1 of the '066 Patent." A31. The District Court did not consider the evidence of invalidity offered by the alleged infringer, as it was required to do. The burden was not on Appellants to show invalidity, but on *Appellees* to show that they are likely to be successful in proving the patent's validity.

The record below establishes that Appellees did not make such a showing. At the evidentiary hearing, Appellees presented no arguments or evidence on invalidity. Tellingly, neither the R&R nor the District Court's order adopting the R&R cite *any* affirmative evidence presented by the Plaintiffs-Appellees on validity. *Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1378-79 (Fed. Cir. 2009) ("[O]ur precedents establish that the phrase, ["raises a substantial question"], refers to a conclusion reached by the trial court *after* considering the evidence on *both sides* of the validity issue. Thus the trial court *first must weigh the evidence both for and against validity* that is available at this preliminary stage

12

in the proceedings."). In concluding that the patent is likely valid, the District Court improperly shifted the burden of proof to Appellants.

Appellants advanced a number of separate invalidity arguments, including: (1) that the claims of the '066 Patent are indefinite under 35 U.S.C. § 112; and (2) that the claims of the '066 Patent are invalid under 35 U.S.C. § 103, as obvious in light of Cooper, Saggio, and Lee. A464-467. The District Court failed to adequately consider these either of these arguments.

### A.    The Terms "Substantially Filled" and "Connecting Force" are Indefinite.

A patent is "invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Ins., Inc.,* 134 S. Ct. 2120, 2124 (2014). Independent claim 1 of the '066 Patent recites that "each elastic fastener [is] configured to provide a *connecting force* that is not less than a weight of one of the containers when *substantially filled with water.*" A48-59 (emphasis added).

As Telebrands demonstrated below and as confirmed by the Board in the PGR decision, the phrase "substantially filled," when read in light of the specification and prosecution history, does not allow one skilled in the art to determine when an expandable container has met this limitation. Instead, the patent establishes a subjective standard whereby each individual determines for himself

13

when the "desired size" of the container has been reached. A57, Col. 4, lines 6-9, 60-62 ("After containers have reached a *desired size or volume* they may be detached from tubes"; "When containers have reached a *desired size* and/or they are filled with the *desired volume* of fluid, they may be removed from tubes"; "In some embodiments, containers 18 may be marked with volumetric measurements, and fluid flow may be turned off when the fluid has filled containers 18 to a *desired volume*.") (emphasis added). The scope of the term "substantially filled" as set forth in independent claim 1, when read in light of the specification and prosecution history of the '066 Patent, is subjective and, therefore, indefinite.

The term "connecting force" is also indefinite. The only definition provided for connecting force is that it is not less than the weight of one of the containers that has achieved the "desired size." Without knowing what volume of water constitutes "substantially filled," one skilled in the art cannot know its weight, thus rendering the "connecting force" indefinite.

The lower court misread the patent when it concluded that the '066 Patent provides "specific parameters regarding when the containers are 'substantially filled.'" A26. When attempting to explain these alleged "specific parameters," the R&R states that the "'066 Patent provides that the containers are substantially filled with water when the 'water overcomes the connecting force and causes the containers to detach from the hollow tubes.'" A26. This statement, however, is

14

incorrect and improperly truncates the claim limitation, which reads as follows: "such that *shaking* the hollow tubes in a state in which the containers are substantially filled with water *overcomes the connecting force* and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers." A58, Col. 6, lines 46-49 (emphasis added) (hereafter "shake-to-detach feature"). Thus, it is the *shaking* – not water – which overcomes the connecting force. The shaking occurs *after* the containers are substantially filled with water, so this clause does not provide any parameters as to when the containers are "substantially filled." The R&R's conclusion that the '066 Patent defines "substantially filled" is based on a clearly erroneous reading of the claim.

The PGR decision confirms that both terms are indeed indefinite. The Board found that "substantially filled" was indefinite because the patent provided no "objective standard for measuring the scope of 'filled' or 'substantially filled.'" A192. The Board also expressly rejected the argument that the lower court found persuasive: that "the containers are substantially filled with water when the 'water overcomes the connecting force and causes the containers to detach from the hollow tubes.'" Rather, the Board correctly concluded that claim 1 of the '066 Patent "plainly requires 'shaking' to detach the containers." A194.

**B.      The Claims of The '066 Patent are Obvious In Light of Prior Art.**

A patent is obvious "if the differences between it and the prior art are 'such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1289 (Fed. Cir. 2006) (citation omitted). As Telebrands argued below, many prior art references, including Cooper, Saggio, and Lee, disclose hose attachment devices with multiple tubes, self-sealing water balloons, and systems for filling multiple self-sealing water balloons at one time. A464-467. At the hearing, Telebrands presented a demonstrative of the commercial embodiment of the Cooper sprinkler with balloons attached to each tube to demonstrate that claim 1 was an obvious combination of the prior art. A1961-1966; A149-150.

The District Court wrongly dismissed this showing, incorrectly finding that the prior art references did not disclose an elastic fastener having the properties recited in claim 1 of the '066 Patent. A29-30. Appellees did not raise this argument in their brief or at the hearing, and the magistrate judge raised this issue for the first time in the R&R. The R&R and District Court's conclusion is wrong for at least three reasons. *First*, the district court misread the claim when it concluded that the elastic fastener enables the shaking to overcome the connecting force that holds the containers onto the tubes. A30. The elastic fasteners do not enable shaking, and the

16

magistrate judge does not explain how this could be possible. *Second*, the magistrate judge ignored that the *functional* limitations of the elastic fastener do not affect the patentability of the *apparatus* claimed in the '066 Patent. A205-206. The District Court should have – but did not – assess whether the prior art combination disclosed the claimed *structure,* not whether the prior art necessarily performed the same *function.* Specifically, it is "well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable." *In re Schreiber*, 128 F.3d 1473, 1477-78 (Fed. Cir. 1997). The District Court's focus on the *function* of the elastic fasteners was clear error.

*Third*, the District Court also wrongly found that because the Lee reference related to obesity, it was unclear "how a person of ordinary skill in the art would have been motivated to combine Lee with Cooper, which relates to lawn and garden sprinklers, or Saggio, which relates to a water balloon system." A30. The District Court is simply wrong in concluding that because the prior art derives from a different field, that is the end of the obviousness inquiry. When evaluating prior art in the context of determining obviousness, a court must consider "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Scientific Plastic Prods. Inc., v. Biotage AB*, 766 F.3d 1355,

17

1359 (Fed. Cir. 2014) (quoting *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992)). Here, the District Court never addressed whether the references are reasonably pertinent to the problem here. If the court had undertaken the proper inquiry, it would have recognized that all the prior art related to the same problem addressed by the '066 Patent – automatically sealing a balloon or multiple balloons at one time.

Finally, the District Court stated that secondary considerations "will be relevant" in this case to rebut any "prima facie showing of obviousness," but made no findings as to any secondary considerations. A31. Indeed, although the District Court concluded that Appellees "ha[d] set forth evidence of commercial success and copying," the court failed to identify any such evidence, from either Appellees' papers or the testimony presented at the hearing. In actuality, Appellees presented no evidence of sales. To the extent that the District Court may have relied on Mr. Malone's testimony or other statements concerning the popularity of his product when he first introduced it, Appellees never attempted to demonstrate a nexus between their products' alleged commercial success and any of its patented features. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1322 (Fed. Cir. 2012) (declining to consider commercial success in obviousness analysis where Plaintiff failed to show "the requisite nexus between the patented design and the success of [the product]."). Further, despite the fact that Appellants had not yet

answered the complaint, the District Court improperly shifted the burden by observing that Appellants had not yet denied copying, rather than pointing to any affirmative evidence of copying. The overwhelming evidence of obviousness in light of the prior art outweighs any of these secondary considerations. The lower court clearly erred in its obviousness analysis.

The lower court's error is underscored by the Board's conclusion, based on the same evidence, that all claims of the '066 Patent asserted by Appellees in this action are indeed obvious. Among other things, the Board determined that there was sufficient evidence to "support a legal conclusion of obviousness as to claims 1-4, 8, and 14 based on the combined teachings of Cooper, Saggio, and Lee." A204. Specifically, the Board found that Lee was "reasonably pertinent to a particular problem the inventor of the '066 Patent was trying to solve." A204. The Board also properly rejected the functional arguments that the lower court had accepted regarding the elastic fastener and shake-to-detach language in the claim. Rather, the Board correctly reasoned that "the challenged claims are apparatus claims, which must be distinguished from the prior art in terms of structure rather than function." A205.

Although the Board's decision post-dates the issuance of the preliminary injunction, the PGR Decision is nevertheless highly relevant "when evaluating… the likelihood of success on the merits." *See Procter & Gamble Co. v. Kraft Foods*

19

*Global, Inc.,* 549 F.3d 842, 847; *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products*, LLC, 431 F. App'x 884, 889 n.3 (Fed. Cir. 2011) ("Although the rejection issued after the District Court's preliminary injunction ruling, we note that the rejection provides further support for First Quality' position that the '187 patent claims are 'vulnerable.'").[2]

Here, the Board applied the same "more likely than not" standard that the District Court is supposed to apply in determining likelihood of success on the merits. *See* 35 U.S.C. § 324(a); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009) (The trial court "must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid."). Furthermore, the Board considered virtually the same record that was before the lower court. A547-549 ¶¶ 4-22.

At a minimum, the conflict between the Board's and the District Court's findings on the validity of the '066 Patent establishes a substantial question concerning the validity of the patent. *See, e.g.*, *E.I. du Pont de Nemours & Co v.*

---

[2] Although *Kimberly-Clark* and *Procter & Gamble* involve *inter partes* reexamination ("IPR") proceedings rather than post-grant review proceedings, the Board uses the same standard in both proceedings. *Compare* 35 U.S.C. §§ 311-318 (standard for review is "reasonable likelihood that the petition would prevail with respect to at least one of the claims challenged") *with* 35 U.S.C. § 324 (standard for a post-grant review is whether "more likely than not that at least 1 of the claims challenged in the petition is unpatentable").

*MacDermid Printing Solutions LLC*, 525 F.3d 1353, 1358 (Fed. Cir. 2008) (granting a stay pending an appeal of the injunction and holding USPTO examiner's rejection of patent claims in a reissue proceeding as invalid demonstrated that substantial legal questions existed concerning the validity of the patent).

In summarily dispensing with Appellants' invalidity arguments, the lower court clearly erred.

## III.   THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES WOULD LIKELY SUCCEED IN PROVING THAT THE BALLOON BONANZA PRODUCT INFRINGES THE '066 PATENT.

The District Court did not construe the scope and meaning of disputed terms or analyze how, using proper claim constructions, Balloon Bonanza met every limitation of claim 1. Even assuming that the District Court applied the proper constructions, Appellees offered insufficient evidence of infringement.

### A.   Appellees Did Not Carry Their Burden of Showing Likely Infringement.

Infringement requires a two-step analysis. First, a court determines the proper scope and meaning of the asserted claim and, second, decides whether the properly construed claim reads on the accused product. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). As with a showing of likelihood of success as to the patent's validity, at the preliminary injunction stage, the *patentee* bears the burden of showing the accused product more likely

than not infringes the patent. *See Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991).

### B.     The District Court Failed to Construe Disputed Terms.

Claim construction is a question of law, which this Court reviews *de novo*. *Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1247 (Fed. Cir. 2008). It remains well settled that to construe a claim term, a court "must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing." *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331,1335 (Fed. Cir. 2008).

The District Court acknowledged that certain claim terms – "attached," and "not less than" in connection with the "connecting force" – required construction to determine the meaning and scope of the claims. A22-25. Yet, the court construed only the term "attached," giving it its plain and ordinary meaning, and then proceeded to apply the element "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water" to the accused product, "irrespective of the interpretation of these claim terms." A24.

The District Court's failure to construe all disputed claim terms requires reversal. A district court's reliance "on an erroneous claim construction in granting injunctive relief…may well constitute an abuse of discretion requiring this [C]ourt

22

to vacate the injunction." *Chamberlain*, 516 F.3d at 1339 (citations omitted). Indeed, this Court has warned that "a correct claim construction is almost always a prerequisite for imposition of a preliminary injunction." *Id.* at 1340. Likewise, the omission of a claim construction analysis strongly counsels in favor of remand because it precludes meaningful review of that court's decision. *See, e.g.*, *Graco, Inc. v. Binks Mfg. Co.,* 60 F.3d 785, 791 (Fed. Cir. 1995).

The R&R, and District Court order adopting it, refused to construe the terms "not less than" and "connecting force" in claim 1, even though both terms were disputed. This conclusion contravenes settled precedent, which compels the court to offer at least a preliminary construction of disputed terms that are relevant to the infringement analysis. *See, e.g.*, *Bell & Howell Document Mgmt. Products Co. v. Altek Sys.,* 132 F.3d 701, 708-709 (Fed. Cir. 1997) (remanding case to district court because court's preliminary claim construction was erroneous); *Shuffle Master, Inc. v. Vending Data Corp.*, 163 Fed. Appx. 864, 868-869 (Fed. Cir. 2005) (vacating preliminary injunction and holding that "a district court in a preliminary injunction proceeding has the duty to determine whether the movant is likely to prevail on the merits, and if that question turns on a contested issue of claim construction, the court must give the claim construction issue the attention necessary to determine the likelihood of success"). As discussed below, the District Court's finding of literal infringement included its determination that the shaking

limitation was met. A24-25; A40-41. Where, as here, the likelihood of plaintiffs' success on the merits "depends fundamentally on the meaning of the asserted claim," *Chamberlain Group*, 516 F.3d at 1339-40, the District Court erred when it applied the shaking element without construing the disputed claim terms.

### C. The District Court Misapplied The Claim To Read On The Balloon Bonanza Product.

Even assuming for the sake of argument that the District Court properly construed the claim language, the court's finding of likely infringement still was clearly erroneous.

*First*, no record evidence supports the court's finding that Balloon Bonanza's tubes are "attached" to its housing. The District Court preliminarily construed the term "attached" by using the plain and ordinary meaning of "connected or joined to something." A24 (citing Merriam-Webster Dictionary, ("connected or joined to something")); A40. Under that construction, the Balloon Bonanza product would infringe the '066 Patent if each hollow tube were connected or joined to the housing at a respective one of the holes at the second end of the housing. Without citation to any evidence, the District Court summarily stated that "the tubes of the Balloon Bonanza product are connected to the housing holes in order for the product to function properly." A24. But, as Appellants' expert Professor Ken Kamrin explained, and as is apparent upon close inspection of the accused product, the tubes do not connect or join to the housing, but rather

24

slide in and out of the holes in the common face of the housing. A1460-61 ¶ 29 ("There is no point of attachment…. The tubes are not attached to any holes."); *see also* A1443, A1960.

*Second*, the District Court referred to Balloon Bonanza's instructions "give the balloons a shake to release" to find that the product most likely met the shaking limitation. A25. This finding is clear error. To infringe, each claim limitation must be present in the *accused product*, without regard for what the product's instructions may say. *See MicroStrategy Inc. v. Bus. Objects, S.A.,* 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim). As a corollary, a limitation is not met merely because it is described in a product's instructions. *Cf. Vita-Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1328 (Fed. Cir. 2009) (rejecting argument that instructions encouraged infringing use of a product).

The evidence presented to the District Court demonstrated that the Balloon Bonanza product does not meet the shaking limitation. The elastic fasteners on the Balloon Bonanza product provide a "connecting force" that is *less than* the weight of substantially filled balloons; as a result, balloons can detach without being shaken. As observed by Appellants' expert, "if the 'connecting force' were "equal to" or more than the weight of a substantially filled container, then the balloons could not fall off "without some external force" or shaking." A1462 ¶ 34. The

videos that the District Court reviewed during the evidentiary hearing show that "the balloons naturally fall off of the tubes when the balloons are substantially filled with water." *Id.* This detachment could not occur unless the connecting force is *less than* the weight of the balloons when substantially filled with water. *Id.* Thus, the Balloon Bonanza product cannot meet the element that each elastic fastener is configured to provide a connecting force that is *not less than* the weight of one of the containers when substantially filled with water. Because the balloons on the Balloon Bonanza product detach without shaking, the District Court committed clear error when it relied on Balloon Bonanza's instructions to find that the accused product met the shaking limitation. A25.

Although the District Court acknowledged that Appellants raised non-infringement arguments, it improperly truncated the required two-step infringement analysis. The Court did not construe all the contested claim terms or even offer a preliminary construction of "connecting force" or "substantially filled," and its analysis of the claim elements was flawed. Consequently, this Court should reverse the lower court's decision. *See Graco*, 60 F.3d at 791 ("The entire omission of a claim construction analysis from the opinion, and the conclusory factual findings on infringement, each provide an independent basis for remand.").

## IV. THE DISTRICT COURT'S FINDING THAT APPELLEES DEMONSTRATED IRREPARABLE HARM WAS CLEARLY ERRONEOUS.

The R&R found that Appellees had suffered irreparable harm due to price erosion, consumer confusion, and damage to reputation. A32-36. The R&R conceded, however, that "[b]ecause this action was filed the same day as the issuance of the '066 Patent and this motion was filed only several days later, the majority of Plaintiff's examples predate the issuance of the '066 Patent." A35. Although the court attempted to mitigate this error by noting that Appellees allegedly presented evidence of ongoing consumer confusion and asserted damage to reputation, this evidence cannot remedy the District Court's error.

Generally, "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). But irreparable harm must be measured from the time the patent issues, not from a prior date. That is because the property right to exclude others does not arise before the patent issues. *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479, 483 (Fed. Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent; thus, disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance.").

27

Here, the District Court departed from this settled legal standard. In support of its irreparable harm finding, the R&R listed multiple events that transpired *before* the '066 Patent issued on June 9, 2015.[3] For example, it is undisputed that Appellees set their price *before* April 2015, i.e. *before* the patent issued.  A110-11. Appellees set their price based on competition that they could not exclude under the patent law. This voluntary decision cannot be transformed into price erosion caused by patent infringement. Because Appellees set their lower price *before* the patent issued, no nexus exists between their price-setting decision and any alleged patent infringement. The district court had no other evidence that could bear even remotely on price erosion. Appellees offered no evidence of markets, channels of trade, or competition within such markets. Zuru's price erosion argument was based entirely on speculative testimony that it would have sold its product at a higher price if Telebrands were not in the market. A274. But, Appellees testimonial evidence that they *may have wanted to sell* to retail stores at a higher price is not the same as evidence that retailers *would have paid* any higher price. Indeed, Ms. Mowbray admitted that retailers set the price that they made this decision before the '066 Patent issued, and that Zuru does not control the retail

---

[3] The District Court also based its findings on consumer confusion, harm to reputation and loss of goodwill on a select set of Amazon product reviews and emails from customers, which predate the '066 Patent's issuance. Appellee's presented testimony, however, that they have received no negative press.  A90.

price of its product. A114. In light of Appellees' admission that they priced their

product before June 2015, the District Court abused its discretion in relying on

alleged price erosion to find irreparable harm.

## CONCLUSION

For the reasons set forth above, Appellants request that the Court vacate the

District Court's preliminary injunction order.


Dated: March 4, 2016


*/s/ Robert T. Maldonado*
Robert T. Maldonado
Elana B. Araj
**COOPER & DUNHAM LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 278-0506
Facsimile: (212) 391-0525
rmaldonado@cooperdunham.com
earaj@cooperdunham.com

*Attorneys for Appellants Telebrands*
*Corp. and Bed Bath & Beyond Inc.*

*/s/ D. Michael Underhill*
David Boies
**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

D. Michael Underhill
Amy L. Neuhardt
Stacey K. Grigsby
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
munderhill@bsfllp.com
rmeyer@bsfllp.com
aneuhardt@bsfllp.com
sgrigsby@bsfllp.com

*Attorneys for Appellant Telebrands Corp.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Stacey K. Grigsby, in reliance upon the word count of the word-processing system used to prepare the brief, certify that the "CORRECTED BRIEF FOR APPELLANTS TELEBRANDS CORP. AND BED BATH & BEYOND, INC." excluding the table of contents, table of authorities, certificate of service, and any certificates of counsel, contains 6,629 words. This brief was prepared using Microsoft Word 2010.

Dated: March 8, 2016                              /s/ Stacey K. Grigsby
                                                 Stacey K. Grigsby

## **CERTIFICATE OF SERVICE**

I certify that on March 8, 2016, I electronically filed a copy of this

"CORRECTED BRIEF FOR APPELLANTS TELEBRANDS CORP. AND BED

BATH & BEYOND, INC." with the Clerk of the Court using the Court's Case

Management/Electronic Case Filing ("CM/EMF") System, which will send a

notification of electronic filing ("NEF") to all counsel of record who are registered

CM/EMF users, including counsel of record for the Appellees.

Dated:  March 8, 2016                    /s/ Stacey K. Grigsby
                                         Stacey K. Grigsby

ADDENDUM

Addendum
Table of Contents

Page

Report and Recommendation of United States Magistrate Judge,

filed Sept. 11, 2015 ..................................................................................**A00017**

Order Adopting Report and Recommendation of Magistrate Judge,

filed Dec. 2, 2015 .....................................................................................**A00039**

Order on Injunction, filed Dec. 22, 2015 ..........................................................**A00043**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

**TINNUS ENTERPRISES, LLC, and**
**ZURU LTD.**

§
§
§

**Plaintiffs,**

§
§

**v.**

§
§

**No. 6:15-cv-00551 RWS-JDL**

**TELEBRANDS CORP., et al.,**

§
§

**JURY DEMANDED**

**Defendants.**

§
§
§

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court is Plaintiffs Tinnus Enterprises, LLC's ("Tinnus") and ZURU Ltd.'s

("ZURU") Motion for a Preliminary Injunction. (Doc. No. 9.)  Defendants Telebrands Corp.

("Telebrands") and Bed Bath & Beyond, Inc. ("Bed Bath") filed a response (Doc. No. 29), to

which Plaintiffs filed a reply (Doc. No. 34), and Defendants filed a sur-reply (Doc. No. 38).  The

Court held a hearing on the Motion on August 28, 2015. After considering the parties'

arguments, the Court recommends that Plaintiffs' Motion for a Preliminary Injunction (Doc. No.

9) be **GRANTED**.

## BACKGROUND

On June 9, 2015, Plaintiffs filed the instant action against Defendants, alleging

infringement of U.S. Patent No. 9,051,066 ("the '066 Patent").  The '066 Patent is entitled

"System and Method for Filling Containers with Fluids" and issued on June 9, 2015, to Tinnus.

'066 Patent.  Tinnus is a company based in Plano, Texas, that is founded and solely owned by

the inventor of the '066 Patent, Josh Malone.  (Doc. No. 9-2, Declaration of Josh Malone, at ¶ 1)

("Malone Decl.").)  The '066 Patent is based on Josh Malone's invention of a new toy product

1

now known as "Bunch O Balloons." *Id.* at ¶ 2. The Bunch O Balloons device is a hose attachment that is fitted with either 35 or 37 Balloons. *Id.* at ¶ 3. When the device is attached to a hose and the water is turned on, the balloons will fill and seal themselves upon release, allowing someone to fill up to 100 water balloons in 60 seconds. *Id.* at ¶¶ 2-3. After developing a successful prototype, Mr. Malone caused Tinnus to file for a patent application on February 7, 2014, which eventually issued as the '066 Patent on June 9, 2015. *Id.* at ¶ 4.

Mr. Malone began taking steps to manufacture his Bunch O Balloons product in March 2014, and the first batch of product was manufactured in June 2014. *Id.* at ¶ 5. To raise funds to continue the manufacture of his product, Mr. Malone launched a Kickstarter campaign on July 22, 2014. *Id.* at ¶ 6. Within 30 days, the project funding reached nearly $1 million and the Kickstarter video had reached 2.9 million views. *Id.* at ¶ 8; Preliminary Injunction Transcript ("Prelim. Inj. Tr.") at 21:17-22:10. On the very first day the Kickstarter campaign launched, Tinnus received a total of 598 public orders for the product, selling out of the initial production batch. *Id.* at ¶ 11. Also on that same day, Mr. Malone's Bunch O Balloons invention was featured on *Sports Illustrated's* on-line magazine. *Id.* at ¶ 9. From there, Mr. Malone continued to gain national attention for his invention. Both *Time* magazine and *People* magazine covered the Bunch O Balloons product on their respective websites, and Mr. Malone appeared on nationally-televised broadcasts of *Good Morning America* and the *Today Show*. *Id.* The Bunch O Balloons product also went viral on YouTube, with approximately 9.6 million views. *Id.* at ¶ 10.

Selling at a price of approximately $17, Tinnus shipped the first batch of Bunch O Balloons product on August 29, 2014. *Id.* at ¶ 13. Tinnus had also begun negotiating to partner with ZURU to provide the manufacture, marketing, and sale of Bunch O Balloons. *Id.* at ¶ 14.

2

**A00018**

On August 19, 2014, Tinnus and ZURU entered into an exclusive license agreement where Tinnus agreed to license ZURU any present or future patent rights owned by Tinnus related to the Bunch O Balloons product. *Id.* at ¶ 15.

In December of 2014, Mr. Malone became aware that Telebrands was advertising and offering for sale a product called "Balloon Bonanza," which appeared to be an exact replica of his invention. *Id.* at ¶ 16. Upon investigation, Mr. Malone determined that Balloon Bonanza was an unauthorized copy of his Bunch O Balloons product and Tinnus and ZURU therefore sent a cease and desist letter to Telebrands on December 16, 2014. *Id.* at ¶ 17. On January 27, 2015, ZURU then filed an action against Telebrands in the District of New Jersey alleging trade dress infringement, trademark infringement, copyright infringement, and fraud pursuant to the New Jersey Consumer Fraud Act. (Doc. No. 29, at 3.)  On the same day the '066 Patent issued, Plaintiffs filed the instant action in this Court alleging that the Balloon Bonanza product infringes the '066 Patent. (Doc. No. 1.) Thereafter, on June 18, 2015, Plaintiffs filed the instant motion for a preliminary injunction. (Doc. No. 9.)

## LEGAL STANDARD

"[B]efore the issues of fact and law have been fully explored and finally resolved, the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1344–45 (Fed. Cir. 2008) (internal quotations omitted); *see Techradium, Inc. v. Blackboard Connect Inc.*, No. 2:08-cv-214, 2009 WL 1152985, at *2 (E.D. Tex. Apr. 29, 2009).

The Court may grant an injunction to "prevent the violation of any right secured by patent." 35 U.S.C. § 283. "The decision to grant a preliminary injunction is within the discretion of the district court." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359,

A00019

1363 (Fed. Cir. 2001); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009); *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (with respect to the closely related topic of permanent injunctions, the Supreme Court recently noted that "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion").

"A district court may enter a preliminary injunction based on its consideration of four factors: (1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Abbott Labs.*, 566 F.3d at 1298 (internal citations omitted) (citing *Erico Int'l Corp. v.  Vutec Corp.*, 516 F.3d 1350, 1353–54 (Fed. Cir. 2008)).

To establish likelihood of success on the merits, the patentee seeking preliminary injunction must show that it will likely prove infringement, and that it will likely withstand any challenges to the validity of the patent. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009); *see Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).

The test for infringement at the preliminary injunction stage is the same as the usual test set forth in *Graver Trank & Mfg. Co., Inc. et al. v. Linde Air Prod. Co.*, which requires the accused device be evaluated in light of the properly construed claim. *Graver*, 339 U.S. 605 (1950); *see Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005).  However, demonstrating likelihood of success on the merits does not lead to a presumption of  irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)) ("We take this opportunity to  put the question to rest and confirm that *eBay* jettisoned the

4

presumption of irreparable harm as it  applies to determining the appropriateness of injunctive relief.")

With respect to validity, "if the alleged infringer raises a substantial question concerning validity, *i.e.*, asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Helifix Ltd. V. Block-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000). "Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006); *Amazon.com Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1358 (Fed. Cir. 2001). The party seeking preliminary injunction may support validity "by showing that the patent in suit [has] successfully withstood previous validity challenges in other proceedings. Further support for such a clear case might come from a long period of industry acquiescence in the patent's validity." *Amazon.com Inc.*, 239 F.3d at 1358 (Fed. Cir. 2001).

Irreparable harm may be demonstrated by showing: (1) infringement has caused or will  cause price erosion or loss of market share; (2) deprivation of the exclusive right to the patented  invention; or (3) that the accused infringer is incapable of paying a damages award. *Bosch*, 659  F.3d at 1156. Loss of revenue and goodwill may also be "incalculable and irreparable." *Smith &  Nephew, Inc v. Arthrex, Inc.*, No. 2:07-cv-335, 2010 WL 2522428, at *2–3 (E.D. Tex. Jun. 18,  2010) (*citing i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010)).  Damage to a reputation as the "sole source" in the United States may also be irreparable harm. *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 324 F. Supp. 715, 724 (S.D. Fla. 1972), *aff'd*, 460  F.2d 1096 (5th Cir. 1972).

5

The balance of hardships weighs the "magnitude of the threatened injury to the patent owner . . . in light of the strength of the showing of likelihood of success on the merits, against  the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).

"Although the public interest inquiry is not necessarily or always bound to the likelihood of success of the merits, in [many cases,] absent any other relevant concerns . . . the public is best  served by enforcing patents that are likely valid and infringed." *Abbott Labs. Inc.*, 452 F.3d at 1348.

## DISCUSSION

### A.  Likelihood of Success on the Merits

To succeed on the first prong, Plaintiffs must show that they will likely prove that the Balloon Bonanza product infringes the '066 Patent; and that the infringement claim will likely withstand Defendants' validity challenges to the '066 Patent. *Amazon.com*, 239 F.3d at 1350.

#### a.  Infringement

Plaintiffs contend that it is more likely than not that Defendants' Balloon Bonanza product infringes the '066 Patent. (Doc. No. 9, at 7.)  The '066 Patent contains one independent claim, claim 1, which recites:

> 1. An apparatus comprising:
> a housing comprising an opening at a first end, and a
>     plurality of holes extending through a common face of
>     the housing at a second end;
> a plurality of flexible hollow tubes, each hollow tube
>     attached to the housing at a respective one of the holes at
>     the second end of the housing;
> a plurality of containers, each container removably
>     attached to a respective one of the hollow tubes; and
>     a plurality of elastic fasteners, each elastic fastener clamping
>     a respective one of the plurality of containers to a
>     corresponding hollow tube, and each elastic fastener

**A00022**

> configured to provide a connecting force that is not less
> than a weight of one of the containers when substantially
> filled with water, and to automatically seal its respective
> one of the plurality of containers upon detaching the
> container from its corresponding hollow tube, such that
> shaking the hollow tubes in a state in which the containers
> are substantially filled with water overcomes the
> connecting force and causes the containers to detach
> from the hollow tubes thereby causing the elastic fasteners
> to automatically seal the containers,
>
> wherein the apparatus is configured to fill the containers
> substantially simultaneously with a fluid.

'066 Patent at 6:30-53.

Plaintiffs contend that the Balloon Bonanza product literally infringes claims 1, 3-4, 7-9, and 14 of the '066 Patent. (Doc. No. 9, at 8.)  In support, Plaintiffs submitted a claim chart mapping each and every limitation of the asserted claims to features of the Balloon Bonanza product. (Doc. No. 9-6.)  To show that each claim limitation is met, Plaintiffs' claim chart relies on images of the Balloon Bonanza product from the Balloon Bonanza website, actual photographs of the product itself, images from the product instruction manual, and other screenshots of the website and related product videos.  (Doc. No. 9-6.)  Plaintiffs also submitted the actual Balloon Bonanza product and a DVD of the Balloon Bonanza video in support.

In response to Plaintiffs' showing, Defendants contest only that the evidence provided for each limitation is "improper and irrelevant" because the images are only screenshots, or are blurry, or from the product instructions, not the actual product.  (Doc. No. 29, at 7-8.)  In fact, the only substantive non-infringement argument presented by Defendants was first raised in Defendants sur-reply (Doc. No. 38, at 4), and then argued at the hearing: that tubes of the Balloon Bonanza product are not attached to the housing. Prelim. Inj. Tr. at 91:1-6.

Defendants' primary non-infringement argument poses a claim construction issue as to the meaning of the word "attached."  In essence, Defendants argue that the tubes are not

"attached" to the housing because they are not permanently affixed to the housing at any respective hole—that is, the tubes can slide in and out of the holes in the housing. (Doc. No. 38-3, Decl. of Dr. Ken Kamrin, at ¶ 29 ("Kamrin Decl.") ("the BALLOON BONANZA product shows holes in the end of a hose attachment portion, it does not show that the tubes are attached to the holes. Instead, it shows that the tubes extend through the holes.")  While Defendants have presented what perhaps may ultimately be a claim construction dispute as to the meaning of the word "attached," Defendants' argument fails to rebut Plaintiff's showing that this limitation is likely met.  Defendants have not pointed to anything in the claims or specification to support their interpretation of the meaning of the word "attached." This is of particular concern where Defendants' interpretation of "attached" appears to run contrary to the plain and ordinary meaning of the word.  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/attached ("connected or joined to something").  Indeed, the tubes of the Balloon Bonanza product are connected to the housing holes in order for the product to function properly—the housing attaches to the hose at one end and sends water through the holes at the other end, which are connected to the hollow tubes in order to fill the balloons with water.

Defendants also submitted an expert affidavit to their sur-reply, the Kamrin Declaration, in support of another new non-infringement argument.  Though Defendants did not present any argument on this position, Dr. Kamrin contends that Plaintiffs cannot show that the element "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water" is met. Kamrin Decl. at ¶ 30.  Dr. Kamrin presents a dispute and disagreement with Plaintiffs' expert as to the meaning of "not less than" in connection with the "connecting force." *Id.* at ¶¶ 31-34.  However, irrespective of the interpretation of these claim terms, Defendants' non-infringement argument, as asserted by its

8

expert, is premised on the fact that for the Balloon Bonanza product, "[s]haking is **not** required to detach the balloons from the tubes." *Id.* at ¶ 34 (emphasis in original). However, the instruction manual for the Balloon Bonanza product, which is included with the product in the product box, expressly recites at step 4 "[t]urn off water and give balloons a shake to release." Accordingly, Defendants' expert's opinion appears to be at odds with the manual included with the sale of the Balloon Bonanza product. Regardless, to the extent the dispute will center upon whether shaking is **required,** it is at least the case that shaking is instructed to release the balloons. Therefore, this argument is insufficient to show that Plaintiffs are not likely to succeed on their infringement claim.

Accordingly, the Court finds that Plaintiffs are likely to show that the Balloon Bonanza product infringes at least claim 1 of the '066 Patent.

### b. Invalidity

As a preliminary matter, Defendants did not substantively brief their invalidity arguments, nor did they present their arguments at the hearing. Instead, Defendants wholesale cite to an expert declaration and their eighty page Post-Grant Review petition in support. (Doc. No. 29, at 10-11.) This approach places an enormous burden on this Court to sift through numerous exhibits and hundreds of pages to ascertain the basis for Defendants' invalidity arguments. Particularly, when the Court is considering whether to issue a preliminary injunction and the Court affords the parties the opportunity for a full hearing, the parties are expected to use that time to build the record and present their arguments at the hearing. Defendants chose to present no witnesses at the hearing and failed to make any substantive argument as to the invalidity of the '066 Patent. While Defendants' approach is particularly

inefficient and unhelpful, the Court nonetheless has considered Defendants' positions from the
briefing for purposes of deciding this motion.

Defendants contend the '066 Patent is invalid as indefinite under 35 U.S.C. § 112 and
obvious under 35 U.S.C. § 103. (Doc. No. 29, at 9.) With respect to § 112, Defendants
specifically argue that the term "substantially filled" is indefinite, and that the '066 Patent is
non-enabling with respect to the term "connecting force." (Doc. No. 29, at 10.)   Plaintiffs
contend that the patent examiner already properly determined that the terms "substantially
filled" and "connecting force" are not indefinite or lacking enablement. (Doc. No. 34, at 3.)

First, with regard to the term "substantially filled," Defendants argue that the term is
indefinite primarily because the term "substantially" requires individual subjectivity to
determine when the "desired size" has been reached. (Doc. No. 29, at 10.)  However, the term
"substantially" is not *per se* indefinite, and Defendants have not raised a substantial question as
to the validity of the '066 Patent through their subjectivity argument.   *Verve, LLC v. Crane
Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) (holding that the term "'substantially constant
wall thickness' does not of itself render the claims of the [asserted] patent indefinite" because
"[i]t is well established that when the term 'substantially' serves reasonably to describe the
subject matter so that its scope would be understood by persons in the field of the invention,
and to distinguish the claimed subject matter from the prior art, it is not indefinite.")  Here, the
claims of the '066 Patent provide specific parameters regarding when the containers are
"substantially filled."  For example, claim 1 of the '066 Patent provides that the containers are
substantially filled with water when the "water overcomes the connecting force and causes the
containers to detach from the hollow tubes." '066 Patent at 6:48-52. Thus, Defendants have not

10

raised a substantial question concerning the validity of the '066 Patent based on the claim term "substantially filled" being indefinite.

Defendants also have not raised a substantial question as to whether the claims of the '066 Patent are properly enabled because of the use of the term "connecting force." Defendants argue that the claim is not enabled because the '066 Patent never describes the type of force where the "connecting force" is not less than the weight of the container—*i.e.* where the container will not detach. (Doc. No. 29, at 10.) However, Defendants fail to address the remainder of claim 1, which specifically recites how the containers are detached from the tubes where the connecting force is not less than the weight of the containers when substantially filled with water. Indeed, the claim goes on to recited that that "***shaking*** the hollow tubes in a state in which the containers are substantially filled with water ***overcomes the connecting force*** and causes the containers to detach from the hollow tubes thereby causing the elastic fasteners to automatically seal the containers." '066 Patent at 6:46-52 (emphasis added). This claim is consistent with the detailed description provided in specification of the '066 Patent. *See, e.g.*, '066 Patent at 3:52-55 ("[i]n another example embodiment, the connecting force holding filled containers 18 to tubes 16 may be overcome by an upward acceleration on tubes 16, for example, when they are shaken.") Accordingly, reading the claim in its full context, Defendants have not raised a substantial question as to validity for lack of enablement.

With regards to obviousness, Defendants cite generally to their petition for Post-Grant Review ("PGR"), which identifies five prior art references in support. (Doc. No. 29, at 10.) Specifically, Defendants contend that claim 1 is obvious over U.S. Patent No. 5,826,803 ("Cooper") in view of U.S. Patent Application US 2013/0118640 ("Saggio"). (Doc. No. 29-9, at 48-58.) Defendants concede that neither reference contains each and every limitation of claim

1 of the '066 Patent as Cooper does not disclose any containers to be filled and Saggio does not disclose a plurality of holes through a common face of the housing and a plurality of flexible hollow tubes.

Upon a review of the PGR petition and the references contained therein, the Court cannot find that Defendants have raised a substantial question as to the validity of claim 1 of the '066 Patent as obvious over Cooper in view of Saggio. Particularly, neither Cooper nor Saggio appear to disclose the "elastic fasteners" as claimed in the '066 Patent. Defendants contend that Saggio discloses this limitation because it discloses an "inner membrane" and "seal" that internally closes off the balloon through a "closure member" when the balloon is compressed or rotated. Saggio at [0019]. Saggio does not disclose any external elastic fastener. This draws an important distinction between the claimed invention and the prior art. Because the '066 Patent claims each "elastic fastener clamping a respective one of the plurality of containers to a corresponding hollow tube," and "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water," it is critical that the elastic fastener must provide the ability to ***clamp*** the containers to the tubes and to provide the requisite claimed "***connecting force***." '066 Patent at 6:39-45. Based on Defendants' PGR submissions, it is not clear how the inner membrane of Saggio would indeed work to clamp the balloons to the tubes of Cooper and provide the claimed "connecting force," particularly when the inner membrane of Saggio extends along nearly the entire inner perimeter of the whole balloon body, as shown below in Figure 2:

12



Saggio Fig. 2.

Ultimately, the claim term may be disputed with regards to whether the "elastic fastener" must be external to the container, but regardless, at this stage, Defendants have not provided the Court a clear picture as to how the disclosures of Cooper and Saggio render claim 1 of the '066 Patent obvious.

In their PGR petition, Defendants also argue that claim 1 is obvious over Cooper in view of Saggio and U.S. Patent Application No. 2005/0004430 ("Lee"). (Doc. No. 29-9, at 63-68.) Defendants contend that Lee discloses the "elastic fastener" element of claim 1 because Lee discloses a rubber band attached to a guide tube that seals and releases the balloon from the guide pipe. (Doc. No. 29-9, at 64, citing Lee at [0033].) However, as discussed above, claim 1

A00029

critically requires "each elastic fastener configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water," which enables the "shaking [of] the hollow tubes" to overcome "the connecting force" and ultimately enables the release and sealing of the container. '066 Patent at 6:39-52.   Again, it is not clear from Defendants' submissions that the rubber band disclosed in Lee provides the claimed connecting force.   Indeed, Lee discloses that the balloon is removed by pushing the guide pipe. Lee at [0033] ("[i]n this state, when the pushing handle 8 of the rear portion of the guide pipe 4 is pushed in the direction of the front end, the rubber band is moved in the direction of the front end of the inner guide pipe by a front end of the outer guide pipe and is escaped from the guide pipe.")   Moreover, the invention disclosed in Lee relates to a treatment of obesity. Lee at [0002].  Defendants do not sufficiently describe how a person of ordinary skill in the art would have been motivated to combine Lee with Cooper, which relates to lawn and garden sprinklers, or Saggio, which relates to a water balloon system. Cooper at 1:8-11; Saggio at [0002].

Finally, Defendants contend that claim 1 is obvious over the ZORBZ Replicator in view of: (1) WIPO Publication No. WO 2015/027187 ("Harter"); (2) Saggio; or (3) Lee. (Doc. No. 29-9, at 74-81.)   As an initial matter, the images of the ZORBZ Replicator do not show an elastic fastener that clamps the balloon to a corresponding hollow tube, as Defendants concede. (Doc. No. 29-9, at 77.)   Defendants contend that Harter discloses this claim element because it discloses a "seating shoulder" on the neck of the balloon. *Id.* However, as with the other references discussed, Defendants do not show how the "seating shoulder" of Harter discloses the "elastic fasteners" claimed in the '066 Patent.   Particularly, Harter does not disclose that the "seating shoulder" is designed or used to seal the balloon through a "connecting force." Instead, Harter discloses that the "seating shoulder" is formed at the area where the neck and

14

body of the balloon join so that a "check valve ball" can rest against the "seating shoulder" to seal the balloon. Harter at [0040]. For the reasons discussed above, Defendants have also not shown how Saggio or Lee disclose this element. Accordingly, the Court cannot find that Defendants have raised a substantial question as to obviousness of claim 1 of the '066 Patent based on the combination of these references.

Moreover, even if Defendants are able to make a prima facie showing of obviousness, the Court is concerned with Defendants' conclusory assertion that secondary considerations need not be considered here. The Court finds that secondary considerations will be relevant here where Plaintiffs have set forth evidence of commercial success and copying by Defendants. Of particular concern is that Defendants' Balloon Bonanza product appears to be a near identical replica of Mr. Malone's Bunch O Balloons product and Defendants have not yet contested the fact that the Balloon Bonzana product was copied from Mr. Malone's invention or asserted that Defendants were the first to invent. In light of these relevant secondary considerations, and the shortcomings in Defendants' obviousness combinations, the Court finds that Defendants have failed to raise a substantial question concerning the validity of the '066 Patent as obvious.

Because Plaintiffs will likely be able to show that the '066 Patent is infringed and Defendants have failed to raise a substantial question as to the validity of the '066 Patent, Plaintiffs are likely to succeed on the merits. Thus, the likelihood of success on the merits factor favors granting a preliminary injunction.

**B. Irreparable Harm**

Plaintiffs assert that Telebrands is causing severe and irreparable harm to Plaintiffs by "interfering with ZURU's exclusive patent rights, confusing consumers, interfering with

plaintiffs' market position, causing price erosion, harming plaintiffs' reputation, and causing loss of good will." (Doc. No. 9, at 9.)  Defendants contend that Plaintiffs are not entitled to a preliminary injunction because Plaintiffs delayed in bringing their motion for a preliminary injunction and have not met their burden of showing they are entitled to one. (Doc. No. 29, at 11-13.)  Here, ZURU and Telebrands directly compete with each other and are the only two competitors in the mass water balloon maker market. Plaintiffs have submitted evidence of several types of harm that have arisen as a result of Telebrands's alleged infringing product being on the market.

As an initial argument, Plaintiffs assert concern as to whether Defendants would be able to ultimately pay any damages because of several bankruptcy filings and fraud investigations currently going on by the State of New Jersey against Telebrands. (Doc. No. 9, at 10.)   These allegations, while they may be true, fail to show that Defendants would not be able to ultimately pay damages for patent infringement.   Thus, these unsubstantiated claims do not show irreparable harm.  However, for the reasons discussed below, the Court finds that the remainder of the evidence provided by Plaintiffs shows that Plaintiffs have and will suffer irreparable harm in the absence of a preliminary injunction.

When Plaintiffs first started selling the Bunch O Balloons product in August 2014, they were selling for $17 each. Malone Decl. at ¶ 13, Doc. No. 9-5, at 145.  Telebrands started airing the infomercial for the Balloon Bonanza product at least as early as December 2014, and although they could not confirm at the hearing when they started shipping product, they estimated it was around March 2015. Prelim. Inj. Tr. at 91:16-92:7.  At this time, starting in April 2015, Plaintiffs had reduced the direct order price of the Bunch O Balloons product to $12.99 as the result of a marketing campaign. Mowbray Decl. at ¶ 8; Prelim. Inj. Tr. at 49:25-

50:11; Doc. No. 9-5, at 147.   In the initial infomercials launched by Defendants, Balloon Bonanza was being advertised for sale at $10. Mowbray Decl. at ¶ 8; Prelim. Inj. Tr. at 50:13-23.   At that time, ZURU also lowered its retail price to $9.99 as a result of guidance from wholesale buyers. Mowbray Decl. at ¶ 8; Prelim. Inj. Tr. at 50:13-23.   Since that time, Balloon Bonanza products have been sold in retail stores for $9.88. (Doc. No. 9-5, at 149-151.)   ZURU maintains that without Telebrands's infringing product on the market, they would have maintained a sales price of $12.99 for the Bunch O Balloons product in retail stores. Mowbray Decl. at ¶ 9; Doc. No. 9, at 12.

As the only two direct retail competitors in this market, it is clear that a pattern of price erosion has arisen from the sale of both products.   Particularly, the market entry and continually reduced sale prices of Telebrands's alleged infringing product has driven down the price at which the Bunch O Balloons product has sold.   Although the price reductions occurred prior to the issuance of the '066 Patent, the harm that is ultimately irreparable here is the now lowered price of sale for the present monopoly right.   That is, had Telebrands never come to market with the alleged infringing product and driven down the price of sale, Bunch O Balloons would have continued to sell, under patent protection, in retail stores for $12.99. *Douglas Dynamics v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Circ. 2013) ("[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions.").

The Court also finds that Plaintiffs have presented additional evidence of consumer confusion, harm to Plaintiffs' reputation, and loss of goodwill.   It is undisputed that Telebrands had a lag time in being able to fulfill their orders for the Balloon Bonanza product they were advertising. Prelim. Inj. Tr. at 91:16-92:7.   At the hearing, Plaintiffs played a recording of a

A00033

customer who called ZURU because her product had not shipped but her card had been charged, despite cancelling her order. Prelim. Inj. Tr. at 55:18-56:3.  When the associate on the phone could not find record of the order, the associate inquired further and it was revealed that the invoice on the customer's bill was for the Balloon Bonanza product, not Bunch O Balloons. *Id.*  At the hearing, Ms. Mowbray testified that this is only one of many such calls ZURU received. Prelim. Inj. Tr. at 55:23-56:22.

Plaintiffs further submitted evidence of consumer confusion regarding who the true inventor is from online reviews, including one comment from the website ReviewBeforeYouBuyIt that stated "the inventor of the Balloon Bonanza who invented this product was formerly called Bunch O Balloons." (Doc. No. 9, at 11.) Plaintiffs also submitted several emails to Mr. Malone and Tinnus inquiring whether the Balloon Bonanza product was Mr. Malone's invention or whether it was a knock-off and inquired whether he had licensed his invention to Telebrands. (Doc. No. 9-5, at 27-37, 51-54 (email complaints to Mr. Malone and ZURU of Balloon Bonanza products leaking and/or not filling properly).) Plaintiffs submissions make clear that consumers are not only confused about which product is which, but also mistakenly thinking that the alleged infringing Balloon Bonanza product is Mr. Malone's invention.  Plaintiffs have shown that Mr. Malone's patented invention has been diluted in the minds of the consuming public and that sales of the Balloon Bonanza product has interfered with Bunch O Balloons mindshare and market position.  At the hearing, Plaintiffs provided testimony (and corresponding excerpted reviews from Amazon.com and ToysRUs.com) that showed the customer reviews and ratings for the Bunch O Balloons product are, on the whole, better than those for the Balloon Bonanza product. Prelim. Inj. Tr. at 57:10-59:13.  For this reason, Plaintiff contends the false association between the products has further harmed the

reputation of Bunch O Balloons. Prelim. Inj. Tr. at 58:17-59:23; *see also* Doc. No. 9, at 12 (Bed Bath customer review of Balloon Bonanza stating "Great concept but needs better quality parts").  The Court finds that these harms cannot be undone or compensated with monetary damages.  Indeed, Plaintiffs will not have a second chance to come to the market for the first time and establish a market share or gain consumer mindshare based solely on the sales of their product.

Because this action was filed the same day as the issuance of the '066 Patent and this motion was filed only several days later, the majority of Plaintiff's examples predate the issuance of the '066 Patent.  However, at least several of these harms are still ongoing.  For example, according to testimony and evidence provided at the hearing, customer confusion is still ongoing and reviews of the products remain lopsided—with the reviews of Bunch O Balloons being more favorable than that of Balloon Bonanza. Prelim. Inj. Tr. at 57:10-58:21. Indeed, many of the confused consumer comments and negative reviews mistakenly associated with the Bunch O Balloons product still exist online. Moreover, Ms. Mowbray testified that ZURU had just shipped its next wave of Bunch O Balloon products to retail stores for the season. Prelim. Inj. Tr. at 61:3-9.  Accordingly, now that the '066 Patent has issued, Plaintiffs have shown a deprivation of the exclusive right to the patented invention through Defendants continued sales of the Balloon Bonanza product.

Finally, Defendants' argument that Plaintiffs delayed filing this motion is unpersuasive. As discussed above, Plaintiffs filed this action the same day the '066 Patent issued.  Plaintiffs then filed this motion for a preliminary injunction based on its claims of patent infringement only 9 days later.

Accordingly, the Court finds that Plaintiffs will suffer irreparable harm in the absence of a preliminary injunction. Therefore, this factor also favors granting a preliminary injunction.[1]

## C.  Balance of Hardships

Plaintiffs contend that the balance of hardships favors granting a preliminary injunction for several reasons: (1) Telebrands and Bed Bath are large companies with many products so any harm from the injunction will be minimized; (2) Telebrands took a calculated risk in selling Balloon Bonanza when it knew of Plaintiffs' patent-pending product; and (3) Mr. Malone and his family rely on the sale of Bunch O Balloons as their primary source of income. (Doc. No. 9, at 14.)  Defendants contend that balance of hardships weighs in favor of Defendants because Plaintiffs have not established a likelihood of success or irreparable harm. (Doc. No. 29, at 15.)

Here, as discussed above, Plaintiffs have shown a likelihood of success on the merits and irreparable harm. Plaintiffs further have shown, and Defendants concede, that Defendants were aware of Planitiffs' pending patent rights and went ahead and made the calculated risk to sell the Balloon Bonanza product.  (Doc. No. 29, at 1 (acknowledging the receipt of Plantiffs' cease and desist letter).)   Indeed, this invention and the Bunch O Balloons product is the livelihood of Mr. Malone and his company Tinnus.  Malone Decl. at ¶ 15.  Telebrands has numerous "As Seen on TV" products in addition to Balloon Bonanza.  On balance, the irreparable harm that Tinnus and ZURU will suffer in the absence of a preliminary injunction outweighs the minimal harm Defendants would incur. Accordingly, this factor weighs in favor of granting a preliminary injunction.

---

[1] The Court acknowledges that Defendants have filed a motion to strike the expert opinions of Dr. Smith (Doc. No. 60), which were submitted to support Plaintiffs' showing of irreparable harm.  The evidence submitted with the Smith Report and provided at the hearing are sufficient to show irreparable harm in this case, as discussed herein. Thus, the Court did not need not to consider the admissibility or credibility of Dr. Smith's opinions in determining whether irreparable harm occurred in this case because ultimately the Court did not need to rely on those opinions in rendering its decision.  The most direct evidence was submitted as exhibits to the Smith Declaration and provided via live testimony at the hearing.

### D.  Public Interest

Plaintiffs contend there is a strong public interest that favors the enforcement of patents. (Doc. No. 9, at 15.)  Defendants contend that this factor does not weigh in favor of granting a preliminary injunction because Plaintiffs have not demonstrated they are likely to succeed on the merits and Defendants have established the '066 Patent is not likely to be found valid. (Doc. No. 29, at 15.)  Here, as discussed above, Plaintiffs have shown a likelihood of success on the merits and Defendants have not raised sufficient uncertainty about the validity of the '066 Patent. *Abbott Labs. Inc.*, 452 F.3d at 1348 ("[a]lthough the public interest inquiry is not necessarily or always bound to the likelihood of success of the merits, in this case absent any other relevant concerns, . . . the public is best served by enforcing patents that are likely valid and infringed."). Therefore, this factor also weights in favor of granting a preliminary injunction.

## CONCLUSION

Having found that all four factors favor granting a preliminary injunction, it is **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction (Doc. No. 9) be **GRANTED**.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in this Report. A Party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusion, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P.

72(b)(2); *see Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en

banc).


**So ORDERED and SIGNED this 11th day of September, 2015.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, and** | § | |
| **ZURU LTD.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. 6:15-cv-00551 RWS-JDL** |
| | § | |
| | § | **JURY DEMANDED** |
| **TELEBRANDS CORP., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER ADOPTING REPORT AND
## RECOMMENDATION OF MAGISTRATE JUDGE

The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636.  The Report and Recommendation of the Magistrate Judge ("R&R"), which contains his proposed findings of fact and recommendation, has been presented for consideration (Doc. No. 66).  The Magistrate Judge recommended granting Plaintiffs' Tinnus Enterprises ("Tinnus") and ZURU Ltd. ("ZURU") Motion for a preliminary injunction. Defendants' Telebrands Corporation ("Telebrands") and Bed Bath & Beyond ("Bed Bath") (collectively "Defendants") filed objections to the R&R (Doc. No. 70), to which Plaintiffs filed a response (Doc. No. 75). The Court reviews the Magistrate Judge's findings *de novo*. 28 U.S.C. § 636 (A)-(C).

Defendants raise two primary objections to the Magistrate Judge's findings: (1) that the recommendation does not include any claim construction and improperly shifts the burden of proof for likelihood of success to the Defendants; and (2) that the factual findings do not support a showing of irreparable harm. (Doc. No. 70, at 1.)  With regard to claim construction, Defendants mischaracterize the Magistrate Judge's findings by claiming no claim construction

1

analysis was conducted.  From the papers and argument presented by the parties, the Magistrate Judge identified only two potential claim construction disputes regarding the terms "attached" and "connecting force," both of which were untimely raised by Defendants for the first time in their sur-reply.  (Doc. No. 66, at 7-9.)  Regardless, the Magistrate Judge fully considered Defendants' untimely arguments and accorded the term "attached" its plain and ordinary meaning at this stage, and found that regardless of the interpretation of the term "connecting force," Plaintiffs were likely to prove infringement. (Doc. No. 66, at 8-9.)  The Court agrees with the Magistrate Judge's findings.

With regard to infringement, Defendants argue that the R&R relied on insufficient evidence of infringement set forth by Plaintiffs. (Doc. No. 70, at 2.)  The Magistrate Judge expressly set forth that he reviewed a claim chart submitted by Plaintiffs that maps each and every limitation of at least independent claim 1, among other asserted claims, to the features of the Balloon Bonanza product.  (Doc. No. 66, at 7.)  Moreover, the Magistrate Judge considered the submissions of the actual Balloon Bonanza product and Plaintiffs' DVD of the product in support. (Doc. No. 66, at 7.)  The Magistrate Judge then carefully considered each non-infringement argument set forth by Defendants, and concluded that Plaintiffs were likely to prove infringement of at least the asserted independent claim 1 of the '066 Patent. (Doc. No. 66, at 7-9.)  Based on the evidence contained within Plaintiffs' claim chart, the actual product, and the DVD tutorial, the Court agrees that Plaintiffs provided sufficient evidence to show that they were likely to prove infringement of at least the asserted independent claim 1 of the '066 Patent.

The Magistrate Judge also did not improperly shift the burden to the Defendants. As explained with regard to infringement, the Magistrate Judge first considered Plaintiffs' affirmative evidence, and, finding it sufficient, then carefully considered all of Defendants' non-

infringement arguments.   Upon thorough review of all the evidence, the Magistrate Judge determined Plaintiffs were likely to show claim 1 of the '066 Patent is infringed.   Such an approach did not improperly shift the burden to Defendants.   Nor did the Magistrate Judge improperly shift the burden on validity.   The Magistrate Judge went through all of the prior art references cited by Defendants, which Plaintiffs contended were considered by the patent examiner during the prosecution of the '066 Patent and properly rejected.   (Doc. No. 66, at 9-15.) Weighing all of that evidence, the Magistrate Judge found that Defendants were not likely to raise a substantial question as to the validity of the '066 Patent.[1]   Moreover, the Magistrate Judge was not incorrect in rejecting Defendants' notion that secondary considerations will not be relevant to this case.   Based on the testimony and evidence presented at the preliminary injunction hearing, the Magistrate Judge raised his concerns that indeed at least some secondary considerations were likely to be relevant. (Doc. No. 66, at 15.)  The Court agrees that secondary considerations are likely to be relevant in this case, and ultimately agrees with the Magistrate Judge's findings.

Finally, the Court finds there is sufficient evidence of irreparable harm to support the Magistrate Judge's finding.   Defendants argue that the R&R incorrectly relies solely on Plaintiffs' self-serving statements.   However, the Magistrate Judge cited to declarations, emails, and other relevant documents submitted by the Plaintiffs in support of his finding. (Doc. No. 66, at 16-18.)   Moreover, regarding the live testimony relied on by the Magistrate Judge, the Defendants do not attack the credibility of the witness testimony they argue was relied on in

---

[1] Notably, the Magistrate Judge went through a thorough analysis of each asserted combination of  references set forth by the Defendants, despite the fact that they did not brief such arguments, or present them at the oral hearing, but simply submitted a 90-page Post Grant Review petition—with numerous attachments—for the Magistrate Judge to wholesale review. (Doc. No. 66, at 9-15.)  Meanwhile, Plaintiffs maintained that the patent is presumed valid and that it had already survived review by the patent examiner, where he considered the prior art cited by Defendants and rejected it. (Doc. No. 34, at 2-3.)

error. (Doc. No. 70, at 4-5.)  The testimony that Defendants cite by Mr. Malone to argue that Telebrands and ZURU are not direct competitors in a two-player market, does not support this contention. (Doc. No. 70, at 5; citing Tr. 41:1-12.)  In that portion of his testimony, Mr. Malone agreed that he compared his Bunch O Balloons product to other water balloon products, and testified that he believed those products are still on the market. (Tr. 41:1-12.)  However, Mr. Malone's testimony does not establish that those products are currently being sold by *direct retailers*, or that they were ever sold in a retail setting.  Defendants provided no evidence that there were other competitors in this marketplace.  Finally, the Court agrees it was permissible for the Magistrate Judge to consider the testimony provided at the hearing regarding customer reviews and customer calls to the ZURU call center.  The testimony relied on by the Magistrate Judge was specifically allowed over Defendants' objections (Tr. at 55:9-11), and ultimately offered in part for demonstrative purposes (Tr. at 56:11-13).  This testimony is consistent with the other evidence presented in the record and cited by the Magistrate Judge. (Doc. No. 66, at 17-19.)

All remaining arguments presented by the Defendants are either new arguments not presented in the original briefing, which the Court will not now consider, or those already properly considered by the Magistrate Judge.  Therefore, the Court adopts the Report and Recommendation of the United States Magistrate Judge as the findings of this Court. All objections are **OVERRULED** and Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 9) is **GRANTED.**

**SIGNED this 2nd day of December, 2015.**

4

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, and** | § | |
| **ZURU LTD.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. 6:15-cv-00551 RWS-JDL** |
| | § | |
| **TELEBRANDS CORP., et al.,** | § | **JURY DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

**ORDER ON INJUNCTION**

Before the Court is the parties' Joint Motion for Bond Amount and Injunctive Order. (Doc. No. 86.)   On September 11, 2015, the Magistrate Judge issued his Report and Recommendation ("R&R") recommending that Plaintiff's motion for a preliminary injunction be granted. (Doc. No. 66.)  On December 2, 2015, the Court issued an order adopting the findings of the Magistrate Judge and overruling all objections ("Order Adopting"). (Doc. No. 84.) Accordingly, on December 3, 2015, the Court issued an order directing the parties to meet and confer regarding the appropriate amount for a bond and an injunctive order. (Doc. No. 85.)  The parties filed the instant motion on December 10, 2015, setting forth their disputes with regard to the bond amount and the scope of the injunction.  Upon consideration of the arguments, the Court resolves those disputes and sets forth the terms of the injunction herein.

The parties present three main disputes with respect to the issuance of the injunctive order: (1) whether the order should apply to only those with actual notice of this Order or whether it should apply to those with knowledge of "the Court's ruling"; (2) whether the injunction applies generally to the Balloon Bonanza product and any colorable imitation of the

1

same, or the Balloon Bonanza product and any colorable imitation of the same that infringes the

'066 Patent; and (3) whether bond should be set at $50,000 or $1,000,000.

This Order sets forth the contents and scope of the injunction against Defendants

pursuant to Federal Rule of Civil Procedure 65. Therefore, regarding the scope of notice, the

injunction shall apply to those who receive actual notice of this Order. The reasons for the

issuance of this injunction are set forth in both the R&R (Doc. No. 66) and this Court's Order

Adopting (Doc. No. 84) and those findings are incorporated by reference herein. In the R&R,

the Magistrate Judge analyzed the likelihood of success, including a detailed infringement

analysis, with respect to the alleged infringing Balloon Bonanza product and the claims of the

'066 Patent. (Doc. No. 66, at 6–9.) Accordingly, there is no basis or reasoning set forth to

expand the scope of this injunction beyond the accused infringing product or any colorable

imitation of the same that *infringes the '066 Patent*.

Plaintiffs cite to *Aevoe Corp. v. AE Tech Co.* in support of their proposed inclusion of

only the "colorable imitation of the same" language. 727 F.3d 1375, 1378 (Fed. Cir. 2013).

However, in that case, the Federal Circuit did not "rubber stamp" the appropriateness of such

language for issuing an injunction in a patent case, but merely found that the addition of this

language by the district court did not amount to a modification of the injunction that would

provide jurisdiction to the appellate court. *Id.* at 1384. Indeed, in that case, the parties previously

agreed to have that language removed because such language was appropriate for enforcing

trademark rights, not patent rights. *Id.* at 1382. It was only during the contempt proceedings,

where a central inquiry is whether a new product is "colorably different," that the court modified

the injunction to include the "colorable imitation" language after finding the defendants in

contempt. *Id.* Here, there is no basis for such an inclusion of language where the Court only

analyzed the patent rights asserted. The scope of the injunction must therefore be limited only to those products that infringe the '066 Patent—the basis for which the injunction was granted. The "colorable imitation" language plausibly expands the scope beyond infringing products to those that merely look similar.

Finally, with respect to the bond amount, Defendants request the bond be set at $1,000,000, which estimates the "minimum financial losses" Defendants would suffer if later found to be improperly enjoined. (Doc. No. 86, at 10–11.) Plaintiffs propose a bond of $50,000 would be appropriate. (Doc. No. 86, at 5.) Defendants bear the burden of showing the extent of their injury resulting from an injunction prohibiting the sale, or offering for sale, of their Balloon Bonanza product. *Oakley, Inc. v. Sunglass Hot Inter.*, No. SA CV 01-1065 AHS, 2001 WL 1683252, at *12 (C.D. Cal. Dec. 7, 2001), *aff'd on other grounds*, 316 F.3d 1331 (Fed. Cir. 2003) ("A successful movant for a TRO or preliminary injunction must post security 'for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.' It is Defendants' burden to reasonably estimate the extent to which they would be damaged if this preliminary injunction were improvidently granted." (quoting Fed.R.Civ.P. 65(c)). For example, the court in *Oakley* awarded a bond of just $100,000 where defendants requested $5 million and $10 million, because "Defendants [did] not provide evidence to substantiate the necessity of their requested bond amounts." *Id.* (citing *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1362 (10th Cir. 1990)).

Here, Defendants have provided no evidence to support their request of a $1,000,000 bond. Indeed, Defendants do not now provide any sales figures or evidence of actual or potential losses, nor did they during the preliminary injunction hearing. Moreover, Defendants appear to agree that they are no longer selling or offering to sell the accused Balloon Bonanza product.

(Doc. No. 86, at 11.)  Defendants appear to primarily dispute a lower bond amount because Plaintiffs' proposed injunction language covers products that do not infringe the '066 Patent. *Id.* However, as discussed above, that language has been rejected by the Court, and the scope of this injunction is limited to those products that infringe the '066 Patent.  Accordingly, having set forth no sound basis for a bond of $1,000,000 where no evidence of actual or potential loss was provided and Defendants are no longer selling the accused product, the Court finds a bond of $50,000 to be appropriate in this case.

Accordingly, for the reasons set forth in Docket Nos. 66 and 84, it is hereby **ORDERED** as follows:

- The Court **FINDS** that Plaintiffs have carried their burden of showing (a) that Plaintiffs will likely succeed on the merits of their patent infringement claim by showing that U.S. Patent No. 9,051,066 ("'066 Patent") is valid and enforceable and that Defendants have infringed the '066 Patent, (b) that Plaintiffs have suffered and will continue to suffer irreparable harm if a preliminary injunction is not granted, (c) that the balance of hardships between Plaintiffs and Defendants favors the Plaintiffs and (d) that the public interest would be served by issuing a preliminary injunction in the present case. (Doc. Nos. 66, 84.)

- Pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 271, 35 U.S.C. § 283, and the inherent equitable powers of the Court, the Court hereby preliminarily **RESTRAINS AND ENJOINS** Defendants, their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with Defendants who receive actual notice of this

A00046

Order by personal service or otherwise from making, using, importing, marketing, advertising, offering to sell, or selling in the United States the Balloon Bonanza product or any colorable imitation of the same that infringes the '066 Patent. *See* Fed.R.Civ.P. 65(d).

- This preliminary injunction shall remain in effect until further order of this Court.

- Plaintiffs are directed to file proof of bond in the amount of fifty thousand dollars ($50,000) within seven business days of this Order. *See* Fed.R.Civ.P. 65(c). The bond shall serve as security for all claims with respect to this preliminary injunction

Pursuant to this Order, the Clerk of Court is directed to terminate the parties' joint motion (Doc. No. 86).

**So ORDERED and SIGNED this 22nd day of December, 2015.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE